825 So.2d 713 (2002)
Charlie W. WARD, Jr., Appellant,
v.
Karen Louise WARD, Appellee.
No. 2000-CA-01342-COA.
Court of Appeals of Mississippi.
September 10, 2002.
*715 John D. Smallwood, Tupelo, attorney for appellant.
James Kelly Dukes, Jr., Hattiesburg, attorney for appellee.
Before McMILLIN, C.J., MYERS, and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. The Chancery Court of Forrest County, Mississippi, granted Karen Ward a divorce on the grounds of adultery from her husband, Charlie Ward. The chancellor divided the marital property between the parties and awarded Karen periodic lump sum alimony in the amount of $750 per month for five years. Charlie appeals the award of divorce and division of marital property for several reasons. First, he argues that the chancery court erred in awarding Karen a divorce when the grounds for divorce had not been properly pled. Next, he argues that the chancery court made several erroneous findings of fact. Charlie further argues that the chancery court failed to make an equitable division of marital property. He also argues that the chancery court erred in awarding Karen alimony. Charlie next argues that the chancery court erred in failing to award him custody of their minor child. He further argues that the chancellor erred in awarding Karen a judgment for arrearage of temporary support. Finally, Charlie argues that the chancellor erred in awarding Karen a portion of her attorney's fees.
¶ 2. After a thorough review of the record and the briefs before the Court, we find that the chancery court failed to make an equitable division of the marital property and erred in awarding Karen alimony based on the erroneous property division. These issues are reversed and remanded for consideration consistent with this opinion.

FACTS
¶ 3. On May 11, 1998, Karen Ward filed a complaint for divorce and/or separate maintenance. in which she sought separate maintenance. Thereafter, Charlie Ward filed an answer and counterclaim for divorce. Karen then filed a motion for leave to amend her original complaint and filed an amended complaint for divorce.
¶ 4. Trial was held on the eighth and thirteenth days of May, 2000. After hearing the testimony and reviewing the evidence before him, the chancellor awarded Karen a divorce based on Charlie's admission of adultery. The chancellor then proceeded to divide the marital property between the parties and awarded Karen $750 monthly in periodic alimony for five years.

STANDARD OF REVIEW
¶ 5. This Court's scope of review in domestic relations matters is limited. Montgomery v. Montgomery, 759 So.2d 1238(¶ 5) (Miss.2000). The findings of a chancellor will not be disturbed by this Court unless the chancellor was manifestly *716 wrong, clearly erroneous or an erroneous legal standard was applied. Id.

LAW AND ANALYSIS

I. DID THE CHANCELLOR ERR IN AWARDING KAREN A DIVORCE WHEN THE GROUNDS FOR DIVORCE HAD NOT BEEN PROPERLY PLED?
¶ 6. Charlie argues on appeal that the chancellor erred in granting Karen a divorce because she had not properly asked for such relief from the court. In her original complaint for divorce and/or separate maintenance, Karen pled grounds for divorce and asked the court to grant her a divorce based on the grounds contained within the complaint. However, she modified her prayer for relief by stating, "but at this time the Plaintiff wishes for separate maintenance." Karen later filed an amended complaint for divorce in which she sought a dissolution of her marriage rather than separate maintenance. There is no evidence in the record to indicate whether an order was entered allowing Karen to file the amended complaint. On this basis, Charlie maintains that the chancery court erred in awarding Karen a divorce.
¶ 7. The Mississippi Rules of Civil Procedure are applicable to suits in chancery court. M.R.C.P. 1. Divorce actions, however, are affected both by the Mississippi Rules of Civil Procedure and Title 93 of the Mississippi Code. M.R.C.P. 81(a)(9). Where the code is not inconsistent, the civil rules will apply. Weiss v. Weiss, 579 So.2d 539, 542 (Miss.1991). Mississippi Rules of Civil Procedure Rule 15(b) is directly applicable in this situation. The rule provides that "when issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."
¶ 8. At trial, both parties submitted to the court that they were present in order to obtain a divorce and division of their marital property. Further, Charlie admitted to the adultery grounds Karen alleged and asked the judge to grant the parties a divorce based on this admission. There was no surprise or prejudice occasioned as a result of the judge's decision to grant a divorce requested by both parties based on Charlie's admission of adultery. As such, this issue is without merit.

II. DID THE CHANCELLOR FAIL TO MAKE AN EQUITABLE DIVISION OF MARITAL PROPERTY?
¶ 9. The division of marital assets is governed by the principles set forth in Johnson v. Johnson, 650 So.2d 1281 (Miss. 1994), Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), and Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994). Henderson v. Henderson, 703 So.2d 262(¶ 15) (Miss. 1997). In Johnson, 650 So.2d at 1287, the supreme court stated that the first step is to characterize the parties' assets as marital or non-marital pursuant to Hemsley. Henderson, 703 So.2d at (¶ 15). In Hemsley, the court defined martial property as any and all property accumulated or acquired during the course of the marriage. Hemsley, 639 So.2d at 915. Assets so acquired are marital assets and as such are subject to equitable distribution by the chancellor. Id. Once the marital assets have been identified, the chancellor should value and equitably divide the marital property, employing the Ferguson factors as guidelines, in light of each party's non-marital property. Drumright v. Drumright, 812 So.2d 1021(¶ 9) (Miss.Ct.App. 2001). However, "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before *717 determining division." Ferguson, 639 So.2d at 929. "If there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." Id. However, if after equitable division of the property, a deficit is created for one party, then alimony based on the value of non-marital assets should be considered. Henderson, 639 So.2d at (¶ 15).
¶ 10. Charlie argues that the chancery court failed to properly identify, value and divide the marital assets. After a thorough review of the record, we are persuaded that Charlie is correct in this assessment. As such, the issue of equitable distribution of the marital property is reversed and remanded to the chancery court.
¶ 11. The divorce decree listed the marital assets as a mobile home located on the homestead, which consists of two tracts of land totaling fifty-two acres; a business known as Ward's Automobile, Inc.; a $10,000 certificate of deposit; Karen's 401K retirement plan; a deer camp and forty acres of land in Perry County, Mississippi; approximately $5,500 paid into the registry of the Chancery Court of Forrest County for cattle owned by the parties and sold at auction by Charlie; various vehicles titled to or owned by Ward's Automobile Inc., and sundry personal property consisting of horses, gear, equipment and household goods. The marital debts were listed as $137,000 for a joint business loan on behalf of Ward's Automobile Inc., secured by the fifty-two acres of the homestead; approximately $30,000 in credit card debt; undetermined taxes to the federal and state governments for both personal and business taxes; and other business and personal debts by Charlie that are unknown and undetermined.
¶ 12. The chancellor awarded Karen the fifty-two acres of land unencumbered by the bank loan, or in the alternative, $150,000 for the value of the land; the $5,500 held in the court's registry for the sale of the cattle; and the appliances, furniture and her personal items from the mobile home. Karen was also granted her 401K plan valued at less than $10,000; the $10,000 certificate of deposit; a Sooner horse trailer, two horses, two cutting saddles plus bridles and other tack for two horses. Karen also received a horse walker, arena panels, all fence panels and lights then affixed to the fifty-two acres of land. The chancellor furthered ordered Charlie to provide Karen with a used Toyota Camry no older than 1997, in good condition, with not more than 20,000 miles and a used F 250 power stroke diesel engine truck, with not more than 50,000 on the tachometer. Finally, Charlie was ordered to pay Karen $6,549.96 for arrearage owed on the temporary support order.
¶ 13. Charlie was granted sole ownership of Ward's Automobile, Inc. valued at approximately $4,000,000 to $5,000,000; the deer camp and land in Perry County valued at $40,000; eight horses; the remaining tools, all guns, all fishing equipment, his saddles, all heavy equipment at the car lot, tools at the car lot, generators, tool boxes, tires, tractors with implements, a Holiday mobile home, and a Chevy S-10 truck, along with any other vehicles which may be titled to him or his business.
¶ 14. The primary problem with this property division is the fact that much of the marital property was not valued by the chancery court as required by Ferguson. The law is clear on this point. As stated in Ferguson, "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." Ferguson, 639 So.2d at 929. *718 According to Ferguson, the estate must have a value placed upon it before the chancellor can determine what is an equitable distribution. Id. In Wilson v. Wilson, 811 So.2d 342(¶ 13) (Miss.Ct.App. 2001), this Court found that because the chancellor failed to value certain items of marital property, it was impossible to determine whether the division of property was equitable. The Court noted that unless the items were of negligible value, some actual value should have been assigned to them in order to ensure that the property division was equitable. Id.
¶ 15. In the present case, the chancery court failed to assign a value to the ten horses owned by the parties, the saddles, tack and other equine related gear, the mobile home, and the vehicles owned by the parties. Also, the parties agree on this appeal that the deer camp and forty acres of land in Perry County, Mississippi, do not belong to either of the parties and should not have been included in the property division. Because all of the marital property was not properly identified and valued, the distribution ordered by the chancery court was not equitable. As such, this issue is reversed and remanded to the chancery court for identification and valuation of all marital assets belonging to Charlie and Karen Ward during their marriage.

III. DID THE CHANCELLOR ERR IN AWARDING ALIMONY TO KAREN?
¶ 16. In his decree, the chancellor ordered Charlie to pay Karen periodic lump sum alimony in the amount of $750 per month for five years. Charlie argues that the chancellor erred in granting Karen alimony because he is unable to pay the alimony as ordered. He maintains that the chancellor estimated his income to be greater than it is as shown by his income tax returns.
¶ 17. The decision to award alimony and the amount thereof is a matter of discretion for the chancellor. Pearson v. Pearson, 761 So.2d 157(¶ 25) (Miss. 2000). When determining whether to award alimony, chancellors are guided by the twelve factors set forth by the Mississippi Supreme Court in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993). These factors include: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. Id.
¶ 18. In Ferguson, the supreme court stated that "[a]ll property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together." Ferguson, 639 So.2d at 929. "If there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." Johnson, 650 So.2d at 1287. Alimony should be considered only "[i]f the situation is such that an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party." Id.
*719 ¶ 19. In the case sub judice, the chancellor considered each of the Armstrong factors as required. However, because the property division was not equitable, it is not possible to determine whether the alimony award should stand as ordered. As such, this issue is reversed and remanded for consideration along with the equitable distribution issue.

IV. DID THE CHANCELLOR MAKE ERRONEOUS FINDINGS OF FACT?
¶ 20. Charlie argues on appeal that the court made several erroneous findings of fact. He maintains that the chancellor erred in determining the gross revenue of his business, his annual income, the value of the marital homestead and the value of Karen's 401K retirement plan. Charlie also maintains that the chancellor erred in finding that the deer camp and land located in Perry County, Mississippi was a marital asset.
¶ 21. As stated above, matters of fact are within the chancellor's discretion and will not be reversed absent a finding that the chancellor was manifestly wrong. Montgomery, 759 So.2d at (¶ 5). In reference to the deer camp, both parties have agreed that the property was not a marital asset and should not have been included in the property division. As for the other items, after a thorough review of the record, it is clear that the parties failed to present the chancellor with the evidence needed to clearly make these findings. This situation is very similar to that faced by this Court in Dunaway v. Dunaway, 749 So.2d 1112 (Miss.Ct.App.1999). In that case, Mr. Dunaway argued on appeal that the chancellor did not correctly value certain marital assets. Id. at (¶ 27). He argued that the chancellor could not have made correct valuations because he did not have the needed evidence. Id. at (¶ 28). The language of the Court is applicable to the present case. The Court stated that "the chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some evidentiary support in the record." Id. To the extent that further evidence would have aided the chancellor in these decisions, the fault lies with the parties and not the chancellor. Id. The chancellor appears to have fully explored the evidence before him and we find no abuse of discretion. However, based on the Court's decision to reverse and remand this case for further findings pertaining to division of the marital property and the award of alimony, it would be proper for the chancellor to hear any needed additional evidence on these matters to aid in the decisions on remand.

V. DID THE CHANCELLOR ERR IN FINDING MARK WARD TO BE EMANCIPATED AND FAILING TO AWARD CUSTODY OF MARK TO CHARLIE?
¶ 22. Charlie argues that the chancellor erred in finding Mark to be emancipated for the purposes of the divorce action. He maintains that Mark was not emancipated and he should have been awarded custody of his minor child.
¶ 23. At the time of judgment Mark was twenty years old. Charlie asked for custody of Mark in his countersuit for divorce; however, he did not seek child support from Karen pursuant to being awarded custody of Mark. In his decree, the chancellor noted that Mark was twenty years of age and appeared to be emancipated.
¶ 24. Mississippi Code Annotated § 93-5-23 provides:
The court may determine that emancipation has occurred and no other support obligation exists when the child: (1) attains the age of twenty-one years or *720 (2) marries or (3) discontinues full-time enrollment in school and obtain full-time employment prior to attaining twenty-one years or (4) voluntarily move from the home of the custodial parent or guardian and established independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one years.
Miss.Code Ann. § 93-5-23 (Rev.1994). Pursuant to this statutory definition, Mark was not legally emancipated because he did not meet any of the three requirements listed above.
¶ 25. Although it may have been error for the chancellor to find Mark emancipated, it was certainly harmless error. The record reveals that Mark continued to live with his father at least until his twenty-first birthday. Charlie did not plead for child support nor did he ask for it at trial.

VI. DID THE CHANCELLOR ERR IN AWARDING KAREN JUDGMENT FOR $6,545.96 FOR ARREARAGE ON TEMPORARY SUPPORT?
¶ 26. Charlie argues that the chancellor erred in awarding Karen judgment in the amount of $6,545.96 for arrearage owed on the temporary support order issued by the court. He maintains that because he had to pay other bills, he was not obligated to make the support payments as ordered. Charlie admitted at trial that he had failed to meet his obligations pursuant to the temporary support order. He stated that he stopped making payments entirely in February 2000 and that he summarily decreased the amount he was paying by half beginning in December 1999. The exact amount Charlie owed to Karen was a matter of fact to be determined by the court. Based on the evidence provided and the testimony of the parties, there is no indication that the chancellor abused his discretion in making this judgment. As such, this issue is without merit.

VII. DID THE CHANCELLOR ERR IN AWARDING KAREN $2500 FOR ATTORNEY'S FEES?
¶ 27. Charlie argues on appeal that the chancellor erred in awarding Karen $2500 to defer the costs of her attorney's fees. He maintains that there was no evidence that Karen could not pay her fees.
¶ 28. Whether to award attorney's fees rests entirely within the discretion of the trial court. USF & G Co. v. Conservatorship of Melson, 809 So.2d 647(¶ 69) (Miss.2002). "A trial court's decision on attorney's fees is subject to the abuse of discretion." Id. "Unless the chancellor is manifestly wrong, his decision regarding attorney's fees will not be disturbed on appeal." Zeman v. Stanford, 789 So.2d 798(¶ 30) (Miss.2001).
¶ 29. An award of attorney's fees is appropriate when the evidence shows that a party is financially unable to pay them. Monroe v. Monroe, 745 So.2d 249(¶ 18) (Miss.1999). In this case, the chancellor determined that based on Karen's salary and her stated expenses, she was unable to pay the entire amount, due her attorney. Also, Charlie had previously admitted that he was several thousand dollars in arrears under the temporary support order the court had issued pending the divorce. Therefore, this Court does not find that the chancellor abused his discretion in awarding Karen $2500 for payment of her attorney's fees.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY GRANTING A DIVORCE TO KAREN WARD ON THE GROUNDS OF ADULTERY IS AFFIRMED. THE DIVISION OF THE MARITAL PROPERTY AND AWARD OF ALIMONY ARE REVERSED AND REMANDED *721 FOR FINDINGS NOT INCONSISTENT WITH THIS OPINION. THE AWARD FOR ARREARAGE OWED PURSUANT TO THE ORDER OF TEMPORARY SUPPORT AND THE AWARD OF ATTORNEY'S FEES ARE AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED ONE HALF TO THE APPELLANT AND ONE HALF TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.