ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. This divorce case was initiated when Cathy Wise filed for divorce from Tim Wise in the Chancery Court of Perry County. After a hearing on the matter where the sole issue was property distribution, the chancellor granted the parties a divorce on the ground of irreconcilable differences and divided the marital property. Aggrieved, Cathy timely appealed the chancellor’s judgment of divorce and raises the following issues, which we consolidate below:
 

 I.Whether the chancellor’s failure to value the assets of the parties’ business was manifestly wrong or clearly erroneous;
 

 II. Whether the chancellor’s distribution of marital property was fair and equitable; and,
 

 III. Whether, on remand, this Court should instruct the chancellor to use a different valuation method other than net asset value for the parties’ business.
 

 Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Tim and Cathy were married in 1973 in Perry County, Mississippi and had two children during their marriage, both of whom were self-sustaining adults at the time of the parties’ divorce. Both Tim and Cathy were gainfully employed during the initial years of their marriage. In 1989, the parties purchased the inventory of an Exxon convenience store (Exxon store) in Richton, Mississippi. For approximately one year after the purchase of the Exxon store, Tim and Cathy continued to work outside the convenience store. Then in 1990, the parties purchased a second convenience store in Beaumont, Mississippi (Beaumont store). That same year Tim quit his job and began relying on the convenience stores as the family’s main source of income. Soon thereafter, Cathy also quit her job and began doing the accounting for the convenience stores. In 1996, they formed Tim’s, Inc. with both Tim and Cathy owning one-half of the stock in the corporation, and they transferred ownership of the stores to the corporation. The parties subsequently bought the inventory of a third store, an Amoco, which was also in Richton (Amoco store).
 

 ¶ 3. On June, 6, 2006, Cathy filed for divorce in the Chancery Court of Perry County citing both fault grounds and irreconcilable differences as the basis therefor. A temporary order was subsequently issued by the chancellor. In the order, the chancellor ordered Cathy to maintain cus
 
 *97
 
 tody of the marital home, in which she was currently living, and charged Tim with the responsibility of continuing the operation of the three convenience stores. Further, Cathy was ordered to relinquish control over the financial records of Tim’s, Inc. to a court-appointed accountant. The chancellor also ordered that the expenses of a marital cattle farm, which also served as Tim’s place of residence, be paid out of the business’s account. Finally, the chancellor’s order stipulated that each party would receive a salary of $1,000 a week, and the order also spoke to other issues between the parties.
 

 ¶ 4. The parties subsequently filed a consent for divorce in which all fault grounds were dropped; the request for divorce was submitted to the chancellor on the sole ground of irreconcilable differences. The only issue before the chancellor was the division of the marital assets and debts. A trial was held on August 11-12, 2008.
 
 [1]
 
 During the trial, sixty-eight exhibits were submitted into evidence and nine witnesses testified, including the parties. Reference to those exhibits and specific testimony of the parties and other witnesses will be made below, as needed.
 

 ¶ 5. The chancellor issued his final judgment of divorce on November 26, 2008, in which he granted a divorce on the ground of irreconcilable differences. In an attached memorandum opinion, the chancellor stated his findings of fact and conclusions of law that were utilized in arriving at his decision concerning the equitable distribution of the parties’ assets and liabilities.
 
 [2]
 
 The details of the equitable distribution of the parties’ property will be elaborated upon below. Cathy filed a motion for reconsideration, clarification, and amend[ment of] judgment or, in the alternative, for a new trial in which she, among other issues, claimed that the chancellor’s property distribution was not fair and equitable. Tim similarly submitted a motion requesting clarification of certain points in the chancellor’s order. The chancellor addressed two issues raised by the parties, but summarily denied the remainder of Cathy’s motion. Cathy timely appealed.
 

 STANDARD OF REVIEW
 

 ¶ 6. “When [an appellate court] reviews a chancellor’s decision in a case involving divorce and all related issues, our scope of review is limited by the substantial evidence/manifest error rule.”
 
 Yelverton v. Yelverton,
 
 961 So.2d 19, 24 (¶ 6) (Miss.2007) (citing
 
 R.K. v. J.K.,
 
 946 So.2d 764, 772 (¶ 17) (Miss.2007)). Specifically, the findings of a chancellor will not be disturbed unless it is found that the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous standard of law.
 
 Id.
 
 Further, a chancellor’s distribution of property will be upheld so long as it is supported by substantial credible evidence.
 
 Bowen v. Bowen,
 
 982 So.2d 385, 894 (¶ 32) (Miss.2008). This is true regardless of whether this Court would have found differently given the facts before the chancellor.
 
 Id.
 
 (citing
 
 Owen v. Owen,
 
 798 So.2d 394, 397-98 (¶ 10) (Miss.2001)).
 

 DISCUSSION
 

 WHETHER THE CHANCELLOR’S DISTRIBUTION OF PROPERTY WAS FAIR AND EQUITABLE
 

 ¶ 7. Cathy argues that the chancellor’s error in arriving at the final distribution of
 
 *98
 
 the parties’ assets and liabilities was twofold. First, she claims that the chancellor first erred in failing to make a finding of fact as to the value of both the common stock of Tim’s, Inc., as well as the value of the assets of the Beaumont store. Second, Cathy claims the chancellor was manifestly wrong and clearly erroneous in his ruling pertaining to the overall property distribution as it was inequitable. We will address both of these issues in turn.
 

 A. Whether the chancellor erred in failing to explicitly make a finding of fact as to the value of Tim’s, Inc. or the Beaumont store
 

 ¶ 8. In dividing the parties’ property, the chancellor listed his findings of the value of each item. However, in regard to the convenience stores and Tim’s, Inc., no values were listed in the chancellor’s memorandum opinion. Cathy argues that the lack of a finding of value of the common stock in Tim’s, Inc., or the Beaumont store precludes a meaningful review of the chancellor’s overall distribution; therefore, reversal is required. In response, Tim neglects to mention the fact that the chancellor failed to provide an explicit finding of value for the common stock of Tim’s, Inc., but he claims that sufficient evidence is present in the record concerning the value of the common stock in Tim’s, Inc., to affirm the chancellor’s findings.
 

 ¶ 9. In
 
 Ferguson v. Ferguson,
 
 689 So.2d 921, 928 (Miss.1994), the supreme court set out several guidelines to assist chancellors in arriving at an equitable distribution of a divorcing couple’s property and required findings of fact and conclusions of law to support said distribution. One such factor was “[t]he market value and the emotional value of the assets subject to distribution.”
 
 Id.
 

 ¶ 10. Identifying the need for an accurate valuation of the common stock in Tim’s, Inc., the chancellor ordered an independent appraisal of the company. The first appraisal was completed on July 30, 2007. Using an indicated-value approach, the appraiser concluded that the fair market value of the common stock of Tim’s, Inc., as of July 31, 2006, was $410,143. The record shows that the chancellor ordered an updated appraisal.
 
 [3]
 
 This second appraisal was completed on July 1, 2008, by the same appraiser who valued the common stock of Tim’s, Inc. at $80,000 as of July 31, 2006. The dramatic difference stems from the fact that the appraiser changed the method of valuation to an asset-based approach. A third, and final, appraisal was ordered by the chancellor and was completed on July 1, 2008, by the same appraiser, who valued the common stock of Tim’s, Inc. as of December 31, 2007. This final appraisal also used an asset-based approach to valuation and determined that the value of the common stock of Tim’s, Inc. was $0. The decrease in value from the second to the third appraisal was mostly the result of two loans Tim took out for the business in the total amount of $175,000 in order to satisfy the new practices of the bank primarily used by Tim for the business.
 

 ¶ 11. As stated above, chancellors are required to make a finding of fact as to the market value of the assets involved in an equitable distribution. Failure to do so has often resulted in appellate courts reversing and remanding the case in order for such findings to be made.
 
 See Aron v. Aron,
 
 832 So.2d 1257, 1260 (¶ 15) (Miss.Ct.App.2002);
 
 Ward v. Ward,
 
 825 So.2d 713,
 
 *99
 
 718 (¶ 15) (Miss.Ct.App.2002);
 
 Wilson v. Wilson,
 
 811 So.2d 342, 346 (¶ 14) (Miss.Ct.App.2001). However, such a result is not always the case when an asset is not explicitly valued.
 
 See Jones v. Jones,
 
 904 So.2d 1143, 1148 (¶ 17) (Miss.Ct.App.2004) (finding no error in a chancellor’s failure to make an explicit finding as to the market value of personal property as the chancellor had financial declarations listing the approximate value of the property);
 
 East v. East,
 
 775 So.2d 741, 744-45 (¶ ¶ 7-8, 10) (Miss.Ct.App.2000) (affirming a chancellor’s distribution despite the fact that a substantial marital asset was not valued).
 

 ¶ 12. The record shows that the chancellor gave no indication that he intended to value the common stock of Tim’s, Inc., at any amount other than the $0 figure arrived at in the most recent appraisal. On the date originally set for trial, Cathy’s second attorney withdrew from the case as a result of health issues, and the trial date was delayed. As a result of the delay, the chancellor ordered an updated appraisal of the value of the common stock in Tim’s, Inc. He ordered that the appraisal should value the business as of “at least to the 31st of December 2007.” He further stated, “I need that in order to go forward with an evidentiary hearing in the matter. That will be significant.” Therefore, we can safely assume that the chancellor used the $0 figure from the appraisal that he ordered valuing the business as of December 31, 2007. Furthermore, the chancellor was given no additional evidence by either Cathy or Tim from which to base a finding of value for the common stock of Tim’s, Inc. As such, although to do so would have been the preferred method, we can find no abuse of discretion in the failure of the chancellor to make an explicit finding of fact on the value of the business as a whole or on the Beaumont store specifically when the only indication of value was the most recent court-ordered appraisal. Therefore, we find this issue is without merit.
 

 B. Whether the chancellor’s distribution was fair and equitable
 

 ¶ 13. Cathy argues that given the length of the marriage and her contributions thereto, the chancellor’s division of property was inequitable and manifestly erroneous. As mentioned above, the supreme court established guidelines in
 
 Ferguson
 
 that must be adhered to for the equitable distribution of assets.
 
 Ferguson,
 
 639 So.2d at 928. In general, the chancellor must: (1) classify the parties’ assets as separate or marital; (2) value those assets; and (3) divide those assets classified as marital.
 
 Id.
 
 All assets accumulated during the marriage are presumed to be marital assets.
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 915 (Miss.1994). Those specific guidelines a chancellor should consider when completing the task of equitably dividing the parties’ property include:
 

 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
 

 a. Direct or indirect economic contribution to the acquisition of the property;
 

 b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
 

 c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
 

 2. The' degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
 

 
 *100
 
 3. The market value and the emotional value of the assets subject to distribution.
 

 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
 

 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
 

 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
 

 7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
 

 8. Any other factor which in equity should be considered.
 

 Ferguson,
 
 639 So.2d at 928. However, a chancellor does not have to consider each of the above factors in every case, but may speak to those factors applicable to the case before the court.
 
 Sproles v. Sproles,
 
 782 So.2d 742, 748 (¶ 23) (Miss.2001).
 

 ¶ 14. The chancellor determined that all property that the parties owned was marital property, with the sole exception of a mobile home Tim purchased with funds won at a casino after the separation. The chancellor then proceeded to make his findings of fact related to the
 
 Ferguson
 
 guidelines. He noted Cathy’s contributions to the marital assets in a domestic capacity, and the contributions of both parties from outside employment prior to the purchase of the three stores. However, the chancellor found that while Cathy was a 50% shareholder in Tim’s, Inc., she was “substantially less” than a 50% operator of the business. Additionally, he found that although Cathy had some participation in the operation of the convenience stores, she did not have a significant role in the financial or managerial decisions of either the business or the farm property the parties owned.
 
 [4]
 
 Thus, in terms of direct or indirect contribution to the acquisition of the properties in question, the chancellor stated that the acquisition of the properties owned and managed could not be equally attributed to the parties, but that Tim be given credit for a greater contribution.
 
 [5]
 

 ¶ 15. With regard to waste of assets, or otherwise withdrawn or expended marital assets absent a court order, the chancellor found this to be equal between the parties with some notable exceptions. The chancellor found that Cathy made loans to her brothers from the marital assets totaling $23,050.
 
 [6]
 
 Further, he found that during the parties’ separation Cathy charged $844.34 to the business for goods and services from which the business received no benefit. Additionally, during the separation the chancellor established a salary to be paid to the parties from the proceeds of the business. The chancellor found that
 
 *101
 
 Cathy received an overpayment of salary in the amount of $9,425. Finally, the chancellor found that although it was Cathy’s responsibility, Tim paid the property taxes on the marital home for two years, which totaled $904.95. The total of these charges equaled $34,224.29.
 

 ¶ 16. The chancellor next addressed the emotional value of the assets. He found that Cathy held more of an attachment to the marital home, while Tim had a greater emotional attachment to the farm. The chancellor noted that a determination of emotional value of the business was more difficult. However, he found that based upon Tim’s greater involvement in the initial acquisition of the three convenience stores and overall management of the business that “the business is much more ‘[Tim’s] baby’ and his identity that it is Cathy’s.”
 

 ¶ 17. The chancellor then addressed one final factor that affected the equitable distribution of the marital assets. In discussing the financial needs of the parties and the extent to which a property division could eliminate the need for periodic payment, he found that neither Tim nor Cathy had any impediment that would prevent them from working and that both exhibited an ability for operating a business. Further, he noted that although Cathy expressed a desire to own and operate the Exxon store, she indicated that she would take the Beaumont store if she had to. He concluded by stating:
 

 There does not appear to the Court any practical reason why equitable division of the accumulated properties, based upon fair market values and income producing potentials, cannot be utilized to provide each party with [a] reasonable expectation for future financial security[,] which would be then based solely upon the performance of each and without future friction between them or dependence by either upon the other.
 

 ¶ 18. The chancellor next divided the marital property as follows:
 

 To Cathy:
 

 1. The marital residence property, land and improvements, located at 227 Cochran Road, Richton, MS [$]130,000
 

 2. All personalty, jewelry, furniture, fixtures, appliances, tools, mower, etc. [$]60,000
 

 3. 2001 Ford Excursion [$313,700
 

 4.1989 Chevy Truck [$]500
 

 5. 2002 Honda Recon [$]4,800
 

 6. 2005 Honda Recon [$]7,000
 

 7. Two ice makers at house, computer at house, (From Office: chair, 3 pictures, sofa table)-?[sic]
 

 8. ½ AG Edwards joint account [$] 2,500+
 

 9. AG Edwards account, her name [$]17,412+
 

 10. AG Edwards account, her name IRA [$] 4,403 +
 

 11. AG Edwards account, her name IRA [$]12,854 +
 

 12. Hancock Bank CD, her name [$]33,166 +
 

 13. The BEAUMONT STORE, to the extent and manner set forth hereinafter in the list of allocation of property to Tim, with the express provision that should Cathy, at any future time when Tim is still in business in the Perry County area, propose to sell the Beaumont Store she shall first offer same to Tim at the same terms of sale proposed to others and he shall have first option to purchase same; and if such situation should occur all offer and response must be documented in wi-iting signed by both parties.
 

 b. To Tim:
 

 1.100% of the shares of Tim’s, Inc., a Mississippi LLC, and property thereof including all inventories, stock, equipment, tools, supplies, bank accounts of the corporation, accounts receivable, accounts payable, and properties real or personal of the business known as Tim’s, Inc., or other trade name; EXCEPTING, HOWEVER, THE FOLLOWING, TO-WIT:
 

 The Beaumont Store, including its lease(s) pertaining thereto, its inventories, stock, equipment, tools, supplies, bank accounts, accounts receivables, accounts payable, and properties real or personal of the business known there at as Tim’s or other trade name, all of said Beaumont Store to be transferred and assigned in full unto Cathy Wise as her sole property with effective date of August 15, 2008, subject to the purchase option set forth above in the allocation to Cathy.
 

 2. The farm property, located at 367 Cochran Road, Richton, MS [$]270,000
 

 3. All farm equipment and all cattle [$]118,700
 

 4. 2002 Chevy [$]10,450
 

 5.1989 GMC [$31,400
 

 6. All bank accounts, checking, savings, CDs, IRA, or by any other designation, whether individual or farm or business, including AG Edwards accounts or any other investment film standing in the name of Tim Wise, Peter Tim Wise, or Tim’s, Inc. [$]57,000 +
 

 7.
 
 %
 
 of AG Edwards joint account with Cathy Wise [$] 2,500 +
 

 8.1995 Yamaha Timberwolf [$]500
 

 9.2003 Honda Recon [$]5,000
 

 10. All guns-?[sie]
 

 11. Large wedding portrait of Catherine Wise Chandler -?[sic]
 

 
 *102
 
 ¶ 19. On appeal, Cathy does not dispute the chancellor’s findings of fact in regard to the fair market value of the marital assets or liabilities, save for the lack of value explicitly attributed to Tim’s, Inc. The chancellor divided the liability for the $175,000 loan attributable to Tim’s, Inc. Tim received 80% liability, or $140,000, and Cathy received 20% liability, or $35,000. Furthermore, the record shows that while the marital home was debt free, there were two loans that were secured by the farm land and associated cattle. The record shows that these two loans totaled $70,952 at the time of trial. Additionally, the chancellor identified certain expenditures as waste on Cathy’s part. The chancellor absolved Cathy of the responsibility or liability to repay these amounts, which included: Tim’s payment of the marital home’s property taxes for 2006 and 2007; the unauthorized charges to the business; the unauthorized loans and cash disbursements to her brothers; and the overpayment of wages during separation. As noted above, the record reveals that the total of these charges identified as waste by the chancellor equaled $84,224.29. However, our review of the record shows that the $28,050 figure identified by the chancellor as loans to Cathy’s brothers is not accurate. Certain checks, which are identified in detail in paragraph twenty, cannot be labeled as waste on the part of Cathy as they benefitted both parties. Therefore, the total amount of waste identified by the chancellor of $34,224.29 must be reduced to $26,674.29.
 

 ¶ 20. The record shows that the $23,050 figure is the total of eight checks Cathy wrote from the parties’ joint account and the Tim’s, Inc., business account. Five of the checks were made out to “Cash,” one was made out to Cathy’s brother, and the final two checks were made out to one Betty Brooks. Cathy testified that the one check made out to her brother for $7,000 and $1,000 from a check made out to $2,000 cash was used to pay for her attorney. She stated that the remaining $1,000 was used to pay a lease on the parties’ four-wheelers. Cathy further stated that a $5,000 check made out to cash was also used to pay her attorney. She stated that two checks made out to cash totaling $2,500 were cashed prior to the parties separation, and she did not recall what she used the money for. Cathy testified that the final check made out to cash was for a $6,000 loan to her brother. She stated that he paid it back within a week, and she deposited the money back in the personal account. Finally, the two checks made out to Brooks totaled $550. Cathy explained that Brooks’s son worked out-of-state for Cathy’s brother. Brooks’s son wanted to give a portion of his paycheck to Brooks, but Cathy did not know how to accomplish this using her brother’s system of bookkeeping. Cathy testified that she cashed a portion of Brooks’s son’s check in her personal account and wrote a check on that account for an equal amount in Brooks’s name. Based upon Cathy’s testimony, which was not contradicted, we find that the most that can be attributed to waste from the checks written is $15,500. Cathy’s testimony establishes that the remaining $7,550, which included the checks made out to Brooks; $6,000 loan to her brother; and $1,000 that was used to pay the parties’ lease for four-wheelers, was either paid back or used for the benefit of both Tim and Cathy. Therefore, the total amount of $34,224.29 identified as waste by the chancellor must be reduced by $7,550, which leaves a total amount of waste that is justified by substantial credible evidence of $26,674.29.
 
 [7]
 

 
 *103
 
 ¶ 21. The supreme court has stated that “[e]quitable distribution does not always mean an equal division of property. Mississippi is not a community property state.”
 
 Hensarling v. Hensarling,
 
 824 So.2d 583, 590 (¶¶ 20-21) (Miss.2002). Cathy argues that she received less than a third of the assets of Tim’s, Inc., and only 40% of the other marital assets. However, in regard to the value of the business, any apportionment of a business with a total value of $0 is still worth $0. That being said, Cathy’s argument that the Beaumont store was the least desirable is somewhat supported by the record. Sales tax records for 2007 indicate that the Beaumont store only garnered 22% of the total sales taxes paid by all three stores during the year. However, awarding the Beaumont store to Cathy was the only option available to the chancellor. The testimony at trial revealed that the land and equipment of the Exxon and Amoco stores were leased on a revolving thirty-day basis. The owner of the company, Mitchell Morris, testified that if Cathy was given ownership of the Exxon or Amoco stores that he would not renew the lease because he had always dealt with Tim in regard to Tim’s, Inc., and he was not familiar with Cathy. Furthermore, it should be remembered that although Cathy received what was arguably the least desirable store, the chancellor only apportioned 20% of the debt associated with Tim’s, Inc., to her. Therefore, we can find no abuse of discretion in the division of the assets and liabilities of Tim’s, Inc., between the parties.
 

 ¶ 22. Additionally, applying simple arithmetic to the stated values of the remaining assets granted to each party one arrives at an award of $286,335 to Cathy and $468,050 to Tim. However, once the necessary additions and subtractions are made from the amounts detailed above to arrive at a net award, we find that Cathy received a net award of $313,009.29, and Tim received a net award of $397,098.
 
 [8]
 
 Therefore, Cathy received 44% of the net assets. Furthermore, while the $175,000 loan attributable to Tim’s, Inc., had already been factored into the property division as it was used to arrive at an appraised value of $0, it is worth noting that in addition to the other liabilities associated with the farm and cattle, Tim bore the bulk of the responsibility for the repayment of the $175,000. As such, based on the record before us, we find that the chancellor’s division of marital property is supported by substantial evidence and is not clearly erroneous. This issue is without merit.
 

 ¶ 23. As we affirm the chancellor’s distribution, Cathy’s remaining issue regarding instructions to the chancellor on remand is moot.
 

 ¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF PERRY COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The delay from the initial complaint to the trial date was partially caused by the unavoidable medical issues of Cathy's second attorney, who would later withdraw from the case prior to trial because of those issues.
 

 [2]
 

 . The chancellor reviewed and discussed the guidelines concerning alimony but did not award alimony as he found the property distribution would suffice to meet the financial needs of the parties. On appeal, Cathy does not claim that the chancellor erred in so holding.
 

 [3]
 

 . Although it is not clear from the record, the briefs submitted by the parties indicate that a second appraisal was ordered so that any value associated with goodwill could be removed from the appraised value of the common stock in Tim’s, Inc.
 

 [4]
 

 . The parties farm land was another piece of marital property that the chancellor had to consider in his division of the parties’ assets. Incidentally, Tim lived in a trailer on the land after the parties separated.
 

 [5]
 

 . As far as the other two factors, i.e. contribution of the stability and harmony of the home and family as well as to the education and training of the parties, the chancellor found these to be equal or nonexistent as between the parties.
 

 [6]
 

 . The record shows that labeling the total $23,050 as loans to Cathy's brother is not an accurate representation of these funds. See further discussion of the loans below in paragraph twenty.
 

 [7]
 

 . We note that this figure does not change the chancellor’s overall judgment, but only pro
 
 *103
 
 vides a basis for our calculation of Cathy’s proportion of the parties’ net assets.
 

 [8]
 

 . The amounts used to arrive at a net amount include the liabilities associated with the farm and the cattle, as well as, the $26,674.29 figure identified as waste on the part of Cathy, which was added to her portion of the property division.