## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01529-COA

**RUBY MELISSA WELCH NORWOOD**                    **APPELLANT**

**v.**

**LARRY RANDALL NORWOOD**                              **APPELLEE**

DATE OF JUDGMENT:            07/05/2018
TRIAL JUDGE:                      HON. FRANKLIN C. McKENZIE JR.
COURT FROM WHICH APPEALED:   JONES COUNTY CHANCERY COURT,
                                  SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:      KIMBERLY-JOY LOCKLEY MIRI
                                  ROBERT R. MARSHALL
ATTORNEYS FOR APPELLEE:       TERRY L. CAVES
                                  RISHER GRANTHAM CAVES
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 05/12/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1. After a husband and wife were divorced on the basis of the husband's uncondoned adultery, the chancery court proceeded to value and divide the marital estate. Unhappy with the distribution and seeking alimony, the wife appeals the chancery court's decision.

¶2. Finding no abuse of discretion, we affirm the chancery court's final judgment.

### FACTS AND PROCEDURAL HISTORY

¶3. Randy and Missy Norwood were married in and resided in Jones County, Mississippi. During the course of their marriage, Randy worked as a poultry farmer, and Missy worked at a dental clinic. The couple had one child, a daughter. After many years together, Missy

filed for and was granted a divorce on the ground of Randy's uncondoned adultery.

¶4. During the division-of-the-assets phase of trial, both parties submitted Uniform Chancery Court Rule 8.05 financial statements. Randy disclosed that his net income was $493.00 per month, and Missy disclosed that her net income was $1,909.67 per month. Prior to their marriage, Randy acquired 129 acres of timber land on which he built chicken houses both before and after he married Missy. The chancery court found that this land had been commingled and converted into marital property, stating that "[a]lthough the 129 acre tract of land was non-marital property at the time of the marriage, Randy may have constructed one to two poultry houses on the land after the marriage and the income generated from the poultry houses was used by the parties during the marriage."

¶5. Randy testified that the 129 acres of land and poultry houses were worth $600,000.00 and that the fair market value of the marital home, which sat on 3.37 acres of land, was $240,000.00. These values were reflected in Randy's Rule 8.05 financial statement. Missy's Rule 8.05 financial statement valued the land and poultry houses at $1,148,000.00 and the marital home and 3.37 acres at $261,000.00. However, Missy testified that she "did not know the value of the land and poultry houses or the value of the house and the surrounding 3.37 acres of land." The chancery court found that Randy's "testimony as to the value of the land and house and poultry houses was uncontradicted by any other testimony in the record" and that "the values presented by Randy are the values of the 129 acre tract of land and poultry houses and the house and 3.37 acres of land."

¶6. Missy's Rule 8.05 financial statement reflected that the parties had a loan balance

totaling $639,000.00 secured by the poultry farm and land. Randy's Rule 8.05 financial statement reflected a combined debt balance of $746,355.95 owed to Bank Plus and secured by the poultry farm and the marital home. Relying on the parties' Rule 8.05 financial statements and testimony, the chancery court concluded that "the total value of all land, chicken house[s,] and the home is $840,000.00 minus the debt on same of $746,335.95 leaves the parties an equity in the property of $93,644.05 that can be divided equally between them."

¶7.    The chancery court then proceeded to divide the marital property in accordance with *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). The chancery court noted that "[b]oth parties contributed financially to the accumulation of the marital assets and both parties have been responsible for incurring debt during the marriage." It awarded Randy "all the land and poultry houses and the [marital] house" based on its finding that he was the only party who could operate the poultry business. The chancery court further specified that "Randy will be solely responsible for all of the debt to Bank Plus on both the poultry houses and the [marital] house."

¶8.    The court also vested title to the 3.37 acres and the marital home to Randy and ordered Missy to vacate the residence within thirty days and to execute a quitclaim deed to Randy for the marital home and property. The chancery court awarded Randy all of the personal property he disclosed in his Rule 8.05 financial statement except for the couple's guns, which were divided equally between the parties. The remaining debts were evenly allocated between the parties. Randy was further ordered to pay for Missy's car. The chancery court

granted a judgment in favor of Missy in the amount of $46,922.02 for her half of the real estate equity. The court also awarded Missy the full balance of her retirement account.

¶9. The chancery court incorporated these findings in its final judgment. Missy filed a "Motion to Set Aside or Reconsider Judgment or in the Alternative for a New Trial and Motion to Stay Judgment." In this motion, Missy argued for a new trial or, alternatively, an amendment to the final judgment based on the lack of valuation evidence during trial as to the marital property and the chancery court's failure to address alimony. Missy also requested relief from the final judgment. The chancery court held a hearing on Missy's motion and ultimately denied her requests. Missy then timely filed this appeal.

## DISCUSSION

¶10. On appeal, Missy contends that the chancery court erred in its valuation of the marital assets. Specifically, Missy asserts that the chancery court abused its discretion "by merely accepting Randy's testimony" to determine the valuation of the couple's land, poultry farm, and marital home. Missy argues that because the chancery court erred in valuing the marital estate, the chancery court's property division was also erroneous. Additionally, Missy alleges that the chancery court erred by failing to award alimony.

### I. The division of assets was equitable.

¶11. "It is within the chancery court's authority to make an equitable division of all jointly acquired real and personal property." *Martin v. Martin*, 282 So. 3d 703, 706 (¶7) (Miss. Ct. App. 2019) (quoting *Bullock v. Bullock*, 699 So. 2d 1205, 1210-11 (¶24) (Miss. 1997)). "This Court reviews a chancery court's division of marital assets for an abuse of discretion."

4

*Id*. "We will not reverse a chancery court's distribution of assets absent a finding that the decision was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Id*.

¶12. "Our Supreme Court has held that the foundational step to make an equitable distribution of marital assets is to determine the value of those assets." *Id*. at (¶8) (internal quotation mark omitted). From there the chancery court must equitably divide the marital property according to the factors first articulated in *Ferguson*. *Id*. at 706-07 (¶8).[1]

¶13. Now on appeal, Missy claims error in the chancery court's valuation of the marital assets. However, the chancery court relied upon the evidence provided by the parties in valuation and distribution. The general rule is that "[i]t is incumbent upon the parties, not the chancery court, to prepare the evidence needed to clearly make a valuation judgment." *Id*. at 707 (¶10). In *Martin*, the wife had complained that the husband received more than her after the chancery court's distribution of assets. *Id*. at 706 (¶6). Yet, "[d]espite numerous requests from the chancery court, neither party provided the court with a single valuation of the assets at issue," "[t]here was no testimony of the market value of the real property," and "[a]ppraisals were never conducted." *Id*. at 707 (¶9).

---

[1] The factors are the following:

> (1) contribution to the accumulation of marital property; (2) dissipation of the assets; (3) the marked or emotional value of assets subject to distribution; (4) the value of assets not subject to distribution; (5) the tax and economic consequences of the distribution; (6) the extent to which property division may eliminate the need for alimony; (7) the financial security needs of the parties; and (8) any other factor that in equity should be considered.

*Id*. at 707 (¶8) (citing *Ferguson*, 639 So. 2d at 928).

5

¶14. In light of the general rule, we affirmed the court's decision regarding property distribution. *Id*. at (¶13). For "[w]here a party fails to provide accurate information, or cooperate in the valuation of assets, the chancery court is entitled to proceed on the best information available." *Id*. at (¶10); *see also Messer v. Messer*, 850 So. 2d 161, 170 (¶43) (Miss. Ct. App. 2003) ("This Court has held that when a [chancery court] makes a valuation judgment based on proof that is less than ideal, it will be upheld as long as there is some evidence to support [its] conclusion.").

¶15. In this case, the chancery court considered all of the evidence before it—both parties' Rule 8.05 financial statements and their in-trial testimony. It is clear that more and better proof would have been helpful to the chancery court. But the fact that there was little proof does not automatically warrant a reversal of the chancery court's determination of this issue. As we declared nearly two decades ago, "[t]o the extent that further evidence would have aided the chancellor in these decisions, the fault lies with the parties and not the chancellor." *Ward v. Ward*, 825 So. 2d 713, 719 (¶21) (Miss. Ct. App. 2002).

¶16. The dissent cites *Mace v. Mace*, 818 So. 2d 1130, 1133-34 (¶¶13-14) (Miss. 2002), to suggest we should remand due to the lack of an expert's valuation of the marital property. In that case, the Mississippi Supreme Court reviewed the valuation of a medical practice, which the trial court had assessed at $374,000, including the value of the building and equipment. *Id*. at 1133 (¶13). Because of the complexity of the issues, and because "it [was] abundantly clear from the testimony that the valuation of the practice was unreliable," the Supreme Court reversed and remanded for a more comprehensive valuation. *Id*. at 1134

6

(¶¶15-16).

¶17.    However, *Mace* did not create a requirement that only an expert can conduct a property valuation before an equitable division can be determined.  Parties may choose not to hire an expert or not have the resources to do so. Unlike the complex proof needed in *Mace*, this is not a case that requires clarification on remand.  The chancery court was not impeded in this matter because of the proof presented at trial.  The chancery court found that "Randy's 8.05 Financial Statement shows minimal income from the poultry operations" and that both Randy and Missy agreed the expenses he listed from the poultry farm were accurate.  There is no reason to re-try this case when there is "minimal income" and the expenses were not in dispute.

¶18.    Because it is the parties' duty, and not the chancellor's, to prepare and submit evidence for a valuation judgment, we find no abuse of discretion.  It is clear that the chancery court's decision was based upon the proof mustered by the parties at trial.  It was the parties' decision at trial to present slim proof.  That choice will not result in reversal on appeal.  This decision is affirmed.

**II.    The division of the assets did not leave a deficit warranting alimony.**

¶19.    For Missy's second assignment of error, she contends that the chancery court erred by failing to award her alimony.

¶20.    "Alimony awards are within the discretion of the [chancery court], and [the] decision will not be reversed on appeal unless the [chancery court] was manifestly in error in [its] finding of fact and abused [its] discretion." *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280

7

(Miss. 1993) (citations omitted). "In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." *Id*.

¶21. "Alimony should only be considered if the property division leaves one spouse in a deficit." *Jones v. Jones*, 155 So. 3d 856, 865 (¶35) (Miss. Ct. App. 2013) (quoting *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994)). "If there are sufficient assets to provide for both parties, then there is no more to be done." *Id*.

¶22. Here, Missy was not left with a deficit. The chancery court awarded Randy "[a]ll of the land, poultry houses, and marital domicile" as well as all of the debt for the same. The chancery court found that the amount of equity in the property was $93,64.05, which was ordered to be split between them. The court further awarded a judgment for Missy against Randy in the amount of $46,822.02. Missy also kept her full share of her retirement account.

¶23. The chancery court's findings were that "Randy's 8.05 Financial Statement shows minimal income from the poultry operations" and that both Randy and Missy agreed the expenses he listed from the poultry farm were accurate. Randy disclosed on his Rule 8.05 financial statement that his net income was $493.00 per month. Missy disclosed that her net income was $1,909.67 per month. Had the chancery court ordered Randy to pay alimony, he would have been at a deficit. Therefore, the chancery court did not abuse its discretion by refusing to award alimony. This issue is without merit.

¶24. Finding no abuse of discretion, we affirm the chancery court's final judgment.

¶25. **AFFIRMED.**

8

**CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL AND LAWRENCE, JJ., CONCUR. C. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**C. WILSON, J., DISSENTING:**

¶26. I agree with the majority that "[t]he general rule is that '[i]t is incumbent upon the parties, not the chancery court, to prepare the evidence needed to clearly make a valuation judgment.'" *Ante* at ¶13 (quoting *Martin v. Martin*, 282 So. 3d 703, 707 (¶10) (Miss. Ct. App. 2019)); *see also Ward v. Ward*, 825 So. 2d 713, 719 (¶21) (Miss. Ct. App. 2002) ("To the extent that further evidence would have aided the chancellor in these decisions, the fault lies with the parties and not the chancellor."). However, I respectfully dissent from the majority's holding in this case because the evidence in the record is insufficient to support the chancery court's valuation of the Norwoods' poultry-business assets, which was the most significant part of their marital estate. I would reverse and remand for further proceedings.

¶27. In distributing a marital estate, a chancellor first must classify each asset as marital or non-marital property and then equitably divide the marital property according to the factors first articulated in *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). *E.g.*, *Horn v. Horn*, 909 So. 2d 1151, 1162-63 (¶42) (Miss. Ct. App. 2005) (discussing *Ferguson*, 639 So. 2d at 928). "[T]he foundational step to make an equitable distribution of marital assets is to determine the value of those assets based on *competent* proof." *Dunaway v. Dunaway*, 749 So. 2d 1112, 1118 (¶14) (Miss. Ct. App. 1999) (emphasis added). Failure to value the marital estate properly constitutes reversible error. *See Horn*, 909 So. 2d at 1164-65 (¶¶47-49); *Aron v. Aron*, 832 So. 2d 1257, 1260 (¶15) (Miss. Ct. App. 2002).

9

¶28.    Here, the sole evidence of valuation before the chancellor was the parties' testimony and financial statements.  Randy testified that the couple's poultry houses and the 129 acres of land on which they were situated were worth $600,000.00 and that the value of the marital home was $240,000.00.  In contrast, Missy's Rule 8.05 financial statement valued the poultry houses and land at $1,148,00.00, and the marital home was valued at $261,000.00.  While Missy attempted to substantiate the valuations found in her Rule 8.05 financial statement by offering into evidence a bank appraisal, the chancery court excluded the appraisal as hearsay.  The court went on to discount Missy's financial statement valuations, finding that Randy's "testimony as to the value of the land and house and poultry houses was uncontradicted by any other testimony in the record."  I find this record is insufficient to support a reliable valuation of the Norwoods' poultry-business assets.

¶29.    At trial, Randy was asked about his qualification to appraise and assign real property values.  Randy's response was that he had "been in the poultry business [for] [twenty-five] years."  When questioned whether that experience qualified him to appraise real property or his marital home, the chancellor interjected that "the rule in Mississippi is that anybody that owns property can give an estimate of its value."  There is support for this general proposition.  *See, e.g.*, *Janssen v. Janssen*, 96 So. 3d 23, 30 (¶23) (Miss. Ct. App. 2012) (noting that "a party may testify as to the value of his or her own personal property" (quoting *Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 774 (¶23) (Miss. 2004))).  But I do not read that principle so broadly as to allow Randy's lay testimony to provide the sole support for the chancery court's valuation of the Norwoods' poultry business assets.

10

¶30. In *Mace v. Mace*, 818 So. 2d 1130, 1133-34 (¶¶13-14) (Miss. 2002), the husband, a physician, testified regarding the valuation of his medical practice and related medical equipment. Neither party offered expert testimony about the valuation, and Dr. Mace offered only a net monthly-income formula he had seen "in a medical journal" as a guide in valuing his medical practice. *Id.* at 1134 (¶14). The chancellor valued the practice at $144,000, but the supreme court noted that it was "unclear from the record the basis for the valuation of the practice." *Id*. at 1133-34 (¶¶13-15). To the contrary, "it [was] abundantly clear from the testimony that the valuation of the practice was unreliable." *Id*. at 1134 (¶15). The supreme court repeated *Ferguson*'s admonition that "*expert testimony may be essential* to establish valuation sufficient to equitably divide property, particularly when the assets are as diverse as those at issue in the instant case." *Id.* (quoting *Ferguson*, 639 So. 2d at 929) (emphasis added in *Mace*); *see also Lacoste v. Lacoste*, 197 So. 3d 897, 909-10 (¶¶43-47) (Miss. Ct. App. 2016) (remanding for further proof of business valuation when the Court could not "confidently say that the chancellor's approach gave a correct business valuation"). The *Mace* court remanded for further proof of business valuation, noting that "[o]n remand the parties themselves may establish valuation of Dr. Mace's practice, *if reliable*, or they may prove valuation utilizing expert testimony." *Id.* (emphasis added); *accord Lacoste*, 197 So. 3d at 910 (¶46).

¶31. Similar to *Mace* and *Lacoste*, the parties here did not offer expert testimony to support the valuation of the marital estate. Instead, Randy offered valuations of the couple's acreage, poultry farm, and homestead based solely on his assertion that he had "been in the

poultry business [for] [twenty-five] years." While Randy ostensibly testified as to the value of the real property and improvements thereon, the record contains no reliable proof of the true appraised value of the poultry business and assets.

¶32. I conclude that the chancery court erred in this regard. While I agree with the majority that precedent does not "create a requirement that only an expert can conduct a property valuation before an equitable division," *ante* at ¶17, as in *Mace* and *Lacoste*, "the business valuation here was such an important aspect of the chancellor's ruling that further testimony was essential to establish a proper valuation to divide the marital property fairly and correctly." *Lacoste*, 197 So. 3d at 910 (¶45). Accordingly, I would reverse the chancery court's valuation and subsequent division of marital assets and remand for further proceedings. Therefore, I respectfully dissent.

**BARNES, C.J., WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**