# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00728-COA

**GREG BROWN**                                                           **APPELLANT**

**v.**

**RHONDA BROWN**                                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/2021 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DEREK D. HOPSON |
| ATTORNEY FOR APPELLEE: | JERRY WESLEY HISAW |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART; AND REMANDED - 11/15/2022 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McDONALD, J., FOR THE COURT:**

¶1. Greg Brown appeals the marital property division provisions in the DeSoto County Chancery Court's final judgment of his irreconcilable differences divorce. Greg challenges the court's valuation of several items, the valuation of a business that the parties owned, and the award of two specific items to his ex-wife, Rhonda Brown. Having reviewed the record, the arguments of counsel, and relevant precedent, we affirm the chancery court's judgment in part, reverse it in part, and remand the case for further proceedings.

## Facts

¶2. Greg and Rhonda were married on October 14, 2006. They had no children together, but each spouse had children from prior marriages. After they married, Greg, Rhonda, and

her two children lived in a home that Rhonda had purchased in 2004. Before the separation, the parties refinanced the house to lower the monthly payment.[1] At the beginning of their marriage, Rhonda worked as an apartment complex manager and received child support from her first husband.[2] Greg, who had been incarcerated from 2005 to 2006, began a lawn-mowing business and sold scrap iron. On December 23, 2009, Greg individually filed for Chapter 7 bankruptcy, which was later converted to Chapter 13 proceedings.[3]

¶3. In 2010, Greg and Rhonda started a small business, R&G Used Auto Sales (R&G). When the apartment complex Rhonda managed was sold in January 2015, Rhonda's employment was terminated. She received $15,000 in severance pay, which she invested in R&G along with $15,000 that she withdrew from her 401k retirement fund. She and Greg used that money to purchase vehicles for resale at R&G. Thereafter between 2015 and 2018, Rhonda worked with two other management companies and worked nights and weekends at R&G. In December 2018, Rhonda accepted a position with Fogel Management Group, earning approximately $3,225 per month.[4]

¶4. The parties separated in January 2017, and on April 10, 2018, Rhonda filed for divorce on both fault and no-fault grounds. In her complaint, she listed various items as

---

[1] Rhonda, as the titled owner, signed as the grantor of the deed of trust; Greg signed as well because the property was their homestead.

[2] Rhonda testified that she received only $235 per month in child support; however, in a document in Greg's bankruptcy, he reported the child-support monthly payment as $800.

[3] In his bankruptcy, Greg reported his income from R&G Used Auto Sales was $5,488.81 per month. He was discharged from bankruptcy on June 29, 2014.

[4] At the time of the divorce, Rhonda was no longer receiving child support.

2

property owned by the parties. Greg answered the complaint, and the parties participated in extensive litigation.

¶5. Greg filed his Rule 8.05 financial statement on January 29, 2019; Rhonda filed hers on March 9, 2020. *See* UCCR 8.05. Together, the two Rule 8.05 financial statements listed the following items of property owned by the parties: the marital home, household furniture and fixtures, personal clothing, R&G, a fishing boat, a four-wheeler, a camper, a commercial lawnmower, a tractor, a coin collection, a 2015 Outback, a 2007 Mazda, tools and equipment including a generator, air compressor, chainsaw(s) and miscellaneous tools, a joint bank account with Bancorp South, and an account at Regions Bank. At trial, Greg testified that he took the four-wheeler the parties owned, which was worth about $6,000; but it was totaled, and he no longer had it. Further, although Greg listed the 2015 Outback on his Rule 8.05 financial statement, the only vehicle Rhonda listed on hers was a Mazda. There was no testimony concerning the Outback vehicle. The parties listed their liabilities, including a house note to PNC bank, a note to Medallion for the camper, a note to Bridgecrest for the Mazda, and "credit card debt." There was no testimony or evidence presented to the court about the amount of any credit card debt or to whom such debt was owed.

¶6. On June 16, 2020, after the parties asserted that they had exchanged the Rule 8.05 financial statements, responded to all discovery, and exhausted settlement negotiations, the court administrator set the matter for trial on November 4, 2020. On November 2, 2020, the parties filed a joint motion to withdraw the contested grounds of divorce and proceed on the sole ground of irreconcilable differences. However, they could not agree upon the division of their property, and in their motion they requested that the court resolve this matter.

3

¶7.     The court heard testimony from Greg and Rhonda at hearings held on November 4, 2020, and March 22, 2021.

*Marital Home and Furnishings*

¶8.     Rhonda testified that she purchased the home prior to the marriage, and it remained titled in her name thereafter.  The purchase price was $130,000, but on her Rule 8.05 financial statement, Rhonda valued the home at $100,000.  She reported that the outstanding balance on the mortgage was $88,000, resulting in Rhonda's estimate of $12,000 in equity.  In his Rule 8.05 financial statement, Greg valued the home at $135,000 with $109,000 still owed, resulting in $26,000 of equity.  Information from an internet site was entered into evidence showing the home as potentially listing for $120,000.  No formal appraisal of the home was presented.  Rhonda testified that the household furnishings had a value of $3,000 to $4,000; in his Rule 8.05 financial statement, Greg estimated their value at $11,000.

¶9.     Rhonda testified that both she and Greg paid for the family's living expenses during the marriage.  She said that near the end of the year (October through November) she and Greg would use cash money to buy cars.  During those months, she paid the house note out of her salary.  During the other months of the year, Rhonda said Greg helped pay the house note from dealership funds.

*R&G*

¶10.    Although Greg initially claimed that R&G was his alone, he admitted that the privilege license issued by West Memphis, Arkansas, to operate the business reflects both his and Rhonda's names as owners.  By the time of trial, Greg had removed Rhonda's name from the company, but he admitted that Rhonda owned half of the company and half of the

4

assets. In addition, he acknowledged Rhonda's contribution of $15,000 from her 401k account and her $15,000 severance pay to the business.[5]

¶11. R&G's bank statements between 2015 and 2017 were entered into evidence and showed monthly deposits that ranged from a low of $2,400.69 in November 2015 to a high of $38,097.90 in March 2017. According to these records, the business grew over the three years from 2015 through 2017. The annual deposits rose from $97,299.53 in 2015 to $169,343.91 in 2016 and to $182,465,82 in 2017. On his Rule 8.05 financial statement filed on January 20, 2019, Greg reported that his monthly income from the business and "jobs on the side" was $3,891.66 per month. Until the parties separated in January 2017, they purchased vehicles for cash; after the separation, Greg testified that he went to floor-plan financing, which meant he purchased vehicles with financing from a bank. He had ninety days to sell a vehicle or start paying the bank for it.

¶12. R&G was not incorporated and Greg included R&G's income and expenses on his personal 2016 tax return, which was also entered into evidence. The profit and loss schedule showed that in 2016, R&G grossed $276,476 and after $258,447 of expenses, its net profit was $18,029. The parties owned the building housing the business because no rent expense was listed and Greg testified that he was living at the dealership at the time of the trial. Among the other expenses for the dealership were $9,000 for "other business property," $4,750 in depreciation, and $220,924 in "other expenses," which included among other things the cost of purchasing and repairing the vehicles he sold. He valued the business's

---

[5] Rhonda actually withdrew $20,000 from her 401k account but had to pay $5,000 in taxes for the early withdrawal.

goodwill at $500. Despite R&G's net profit of $18,029 reported to the IRS for 2016, on his Rule 8.05 financial statement Greg valued R&G at $6,241, allegedly calculated from the 2016 tax return.

¶13.    After the first day of testimony, the chancery court continued the case and ordered that in the future, "all vehicles sold from the lot were to be inventoried monthly." At the resumption of the hearing on March 22, 2021, Greg provided a two-page "inventory report" that allegedly showed completed sales since November. However, the report gave no information about the type of vehicles sold or their selling prices. Greg claimed that he could not print out the full report from the computer.

¶14.    Greg testified that he was driving a 2001 truck that he purchased from the city at an auction last year. However, he also testified that he drove different vehicles every day, and all were titled in R&G's name.[6] He said that he and Rhonda had also bought a red truck, worth $20,000 during the marriage that was used to haul cars. That vehicle was located at R&G.

*Camper*

¶15.    In October 2015, the parties borrowed money from Medallion Bank to purchase a 2015 RV camper, priced at $19,887.90. Under the contract, they were obligated to pay a total of $48,660.48 over twelve years. Rhonda testified that the camper was titled in both their names. Neither party listed the camper on their Rule 8.05 financial statements; however,

---

[6] Greg also testified that he "personally" owned two trucks: a burgundy 2013 Chevy Silverado worth $35,000 and a 2008 Dodge pickup truck worth $1,500. But he later admitted these too were titled in R&G's name as well.

6

Rhonda testified that it was worth about $30,000 with $18,000 owed on it.

¶16.    Greg testified that he took the camper after the parties separated because "the camper is in my name. It's mine." The actual title to the camper was not entered into evidence. Greg said Rhonda got behind on the payments so he took it. Rhonda admitted that she did get behind on the payments, but she had worked things out with the creditor so there was no threat of it being repossessed. She said that Greg took the camper without notice to her. Rhonda stated that she had taken her mother camping before and was planning another trip, and they loaded items in the camper in preparation for that trip. But they could not make this "last trip" because her mother became ill. Her mother's wedding ring was in the camper when Greg took it. Rhonda testified that she did not want the camper; she just wanted her mother's wedding ring.[7] Greg testified that he had put the camper in his own name and that the payments were current. However, he agreed that Rhonda could have it if she wanted it.

*Black Truck*

¶17.    Rhonda testified that Greg currently owned and drove a black truck.[8] She also testified that the parties had purchased a black truck during their marriage. Greg did not testify about that first black truck, but he testified that the black truck he was currently driving belonged to Carl Thomas who was on drugs and that Greg paid him to use his truck. Greg and Thomas then traded vehicles, but Greg said ownership was going back to Thomas when Thomas got clean. Both parties also testified about a black/maroon truck. Greg said

---

[7] Greg testified he knew nothing about Rhonda's mother's wedding ring.

[8] Rhonda testified that Greg also had a white pickup that she valued from $15,000 to $20,000, not $1,500.

it was purchased after the separation, but Rhonda said it was purchased in 2015 when they bought the camper because they needed a larger truck to haul the camper.[9] Rhonda valued this truck at between $28,000 and $35,000.

*Lawnmower*

¶18. On his Rule 8.05 financial statement, Greg claimed a lawnmower as a non-marital asset worth $6,000; at trial, he valued the bush hog lawnmower at $3,500 to $4,500. He said that he had it before the marriage, although he admitted that it was used to cut the grass at the house. Greg also testified that he had this commercial lawnmower in his possession. He claimed that he took the lawnmower after their separation because "it doesn't belong" to Rhonda. Greg also testified that he bought a new riding lawnmower during the marriage. But Rhonda testified that the parties had only one commercial lawnmower that "was paid for during the end of our - - beginning of our marriage," leaving the impression that Greg had purchased it prior to the marriage and finished paying for it during the marriage. On her Rule 8.05 statement, Rhonda placed a value of $1,000 on a "lawnmower." However, the only lawnmower she testified about at trial was the commercial lawnmower which she said was worth $8,000.

*Trailers*

¶19. Greg testified that Rhonda also had their two trailers that he valued on his Rule 8.05 financial statement at $2,500. Rhonda, who did not list the trailers on her Rule 8.05 financial statement, testified that Greg had taken the trailers.

---

[9] The record is unclear whether the "black truck" is the same as the "black/maroon" truck or if these are two different vehicles.

*Mazda*

¶20.    Rhonda testified that because Greg gave her vehicle to his girlfriend, she bought a used Mazda for which she was paying a monthly note of approximately $400.  On her disclosure statement, she valued the Mazda at $5,000, but she owed $9,900 on it.[10]

*Tractor*

¶21.    Rhonda testified that there was a tractor that Greg had brought into the marriage.  It was stored in a shed in the backyard.  There was no testimony that the tractor was used during the marriage.  Greg valued it at $5,000 on his Rule 8.05 financial statement.

*Boat*

¶22.    Greg testified that he had the fishing boat prior to the marriage but both he and Rhonda used it thereafter.  When they were stopped by a game warden, Greg was required to register the boat on the spot.  Since Rhonda was a Mississippi resident, he registered the

---

[10] The dissent says that at the time of the trial in March 2021, the Mazda had been repossessed.  However, its status is unclear. Although the record includes a 2019 notice of repossession, this document merely notified Rhonda of the creditor's right to sell the vehicle if not redeemed.  Apparently Rhonda did redeem the Mazda because she listed it on her Rule 8.05 financial statement that was filed on February 5, 2019.  Moreover, during her testimony, she confirmed that her Rule 8.05 financial statement, which listed the Mazda as an asset, was correct and that she was still paying on her vehicle at the time of the trial in 2021. When asked if she had any cars in her personal name *besides the Mazda*, Rhonda mentioned that the parties had several vehicles at some point in their names; she did not say that she no longer had the Mazda.  In addition, the chancery court understood Rhonda to be testifying that she still had the Mazda because the court awarded it to her in its final judgment.  We would note that the Mazda was probably non-marital property since it was purchased after the demarcation date, but that is not a determination that we, as the appellate court, should make.

9

boat in her name. Greg said that the boat was worth about $2,500 to $3,000.[11]  Rhonda valued the boat at $1,800 on her Rule 8.05 financial statement.

*Parties' Requests to the Court*

¶23.    Rhonda told the chancery court that she wanted the money back that she invested in R&G and that she felt she was entitled to a vehicle because she had been paying a car note every month. She testified that during their marriage, the parties had three trucks: a maroon one worth $35,000, a white truck worth $20,000, and a Jeep. They also had a black truck that was sold through the dealership. The Jeep was also gone. Rhonda asked for the maroon truck and the house, as well as the value of her interest in the car lot. She did not want the lawnmower or the camper except to have it out of her name. Greg said that all he wanted from the divorce was his business and that Rhonda could have the house. On April 5, 2021, Greg submitted proposed findings of fact and conclusions of law in which he asked for several other items.[12]

¶24.    After considering the record, the chancery court issued its opinion on April 20, 2021. The court ruled that the date of demarcation was the date of the final separation of the parties, which was January 2017. The court noted its obligation to first classify the property as marital or non-marital and proceeded to list and value the property it found to be marital. It determined that the house was a marital asset with approximately $20,000 in equity. The

---

[11] Greg also testified that the parties had four-wheelers, including a Can-Am, that he valued at $3,000. But he said that the Can-Am was totaled and that he sold the others after the separation.

[12] Rhonda did not file any proposed findings of fact and conclusions of law.

10

court then added the home furnishings and valued them and the home equity at $30,000. The court found that R&G and "the three trucks it owned free and clear" were marital assets, as well as the boat, camper, lawnmower, and tools. But the court gave no value to either R&G as a business or the three trucks the court found the business owned. The chancery court valued the camper at $30,000 with $11,635 in equity because $18,365 was still owed against it. The court valued the other items (boat, lawnmower, and tools) collectively at $3,300.

¶25. After determining the value of the marital property, the court then examined the *Ferguson* factors to determine the equitable distribution of this marital property.[13] The court

_____

[13] In *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), the Mississippi Supreme Court suggested that chancery courts consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>> a. Direct or indirect economic contribution to the acquisition of the property;
>> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
> 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
> 3. The market value and the emotional value of the assets subject to distribution.
> 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
> 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
> 6. The extent to which property division may, with equity to both parties, be

11

concluded that Rhonda had contributed the most financially to the accumulations of the assets, as well as to the stability and harmony of the family relationship. The court found there was not much proof on the withdrawal or dissipation of assets, but the court noted Rhonda's contribution of $30,000 to expand R&G. The court found that Rhonda had a stronger emotional attachment to the house and Greg had a stronger attachment to R&G.

¶26. The court ultimately decided that Rhonda would receive the marital home and furnishings, which the court valued together at $30,000. Rhonda was also awarded the "black truck," the camper, the lawnmower, her mother's wedding ring, and her own vehicle along with the obligation for it. However, the court stated that Greg could receive the camper if he refinanced it to eliminate Rhonda's name on the note. The chancery court also gave Greg the boat, the four-wheelers, the tools, and the trailers, as well as ownership of R&G, which the court did not value, and all vehicles except the "black truck." The court instructed Rhonda's attorney to prepare the final judgment that would embody its opinion. Neither the opinion nor the final judgment calculated the value of the court's equitable division of the parties' property. On May 10, 2021, the chancery court signed the final judgment of divorce, which summarized the division of the property according to the provisions of its opinion.

¶27. On May 18, 2021, Rhonda filed a motion to reconsider, simply to ask for a

---

utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.

12

"clarification of terms" and deadlines for enforcement. Greg responded to Rhonda's motion on that same day, asking that the court set aside its opinion and adopt his previously filed findings of fact and conclusions of law. On June 23, 2021, the chancery court denied both motions and ordered that all property belonging to the other be turned over by July 1, 2021. On June 25, 2021, Greg filed his notice of appeal.

¶28. On appeal, Greg raises several issues including whether the chancery court failed to value all of the marital assets and/or failed to properly include and value other alleged marital assets, whether the chancery court failed to value R&G, and whether the chancery court erred in awarding the black truck and Rhonda's mother's wedding ring to Rhonda.

### Standard of Review

¶29. "When reviewing property distribution in a divorce case, this Court applies a limited standard." *Coleman v. Coleman*, 324 So. 3d 1204, 1209 (¶10) (Miss. Ct. App. 2021) (citing *Poisso v. Poisso*, 300 So. 3d 1067, 1073 (¶22) (Miss. Ct. App. 2020)). The chancery court has substantial discretion as to the distribution of property in a divorce. *Dunaway v. Dunaway*, 749 So. 2d 1112, 1114 (¶5) (Miss. Ct. App. 1999). The chancery court's findings will be affirmed unless the court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. *Id*. (citing *Ory v. Ory*, 936 So. 2d 405, 409 (¶7) (Miss. Ct. App. 2006)). If supported by substantial credible evidence, the property division and distribution will be upheld. *Id*. "This Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." *Mullins v. Ratcliff*, 515 So. 2d 1183, 1189 (Miss. 1987).

13

**Discussion**

¶30. "Mississippi law requires equitable distribution of the marital estate during divorce proceedings." *Reynolds v. Reynolds*, 287 So. 3d 1019, 1023 (¶8) (Miss. Ct. App. 2019) (quoting *Griner v. Griner*, 235 So. 3d 177, 184 (¶9) (Miss. Ct. App. 2017)). To divide and distribute property between the parties, the chancellor must "(1) classify the parties' assets as marital or separate, (2) value those assets, and (3) divide the marital assets equitably." *Id*. (quoting *Burnham v. Burnham*, 185 So. 3d 358, 361 (¶12) (Miss. 2015)). "Marital property" is property acquired or accumulated during the marriage, *Common v. Common*, 42 So. 3d 59, 62 (¶9) (Miss. Ct. App. 2010), or property that was once separate but because of full-family use becomes marital. *Parrish v. Parrish*, 245 So. 3d 519, 523 (¶10) (Miss. Ct. App. 2017). To determine the date when assets cease to be marital, i.e., the point of demarcation, the chancery court can use either the date of separation or the date of the divorce. *Randolph v. Randolph*, 199 So. 3d 1282, 1285 (¶9) (Miss. Ct. App. 2016).

¶31. There is a rebuttable presumption that all property is marital and the burden of showing otherwise rests with the spouse claiming the property as non-marital. *Neely v. Neely*, 305 So. 3d 164, 168 (¶14) (Miss. Ct. App. 2020); *Rhodes v. Rhodes*, 52 So. 3d 430, 437 (¶23) (Miss. Ct. App. 2011). Only marital property is subject to equitable distribution between the parties. *Hatton v. Hatton*, 323 So. 3d 1149, 1154 (¶10) (Miss. Ct. App. 2021). Failure to classify assets is reversible error. *Smith v. Smith*, 856 So. 2d 717, 719 (¶8) (Miss. Ct. App. 2003).

¶32. The valuation of property is a question of fact. *Williams v. Williams*, 303 So. 3d 824, 833 (¶35) (Miss. Ct. App. 2020). "Property division should be based upon a determination

14

of fair market value of the assets, and these valuations should be the initial step before determining division." *Horn v. Horn*, 909 So. 2d 1151, 1164 (¶47) (Miss. Ct. App. 2005) (quoting *Ferguson*, 639 So. 2d at 928)). In *Common*, 42 So. 3d at 63 (¶12), we pointed out that the chancery court cannot be blamed if the parties fail to present evidence of value. Quoting *Dunaway*, 749 So. 2d at 1121 (¶28), we stated:

> [T]he chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some evidentiary support in the record. To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we lay that at the feet of the litigants and not the chancellor. The chancellor appears to have fully explored the available proof and arrived at the best conclusions that he could, and we can discover no abuse of discretion in those efforts that would require us to reverse his valuation determinations.

*Common*, 42 So. 3d at 63 (¶12). Depending on the simplicity of the case, a chancellor may adopt the values cited in the parties' Rule 8.05 financial statements, in the testimony, or in other evidence. *Horn*, 909 So. 2d at 1165 (¶49). "If a party fails to provide accurate or sufficient information or cooperate in the valuation of an asset, the chancellor is entitled to proceed on the best information available to him or her." *Lageman v. Lageman*, 313 So. 3d 1075, 1080 (¶9) (Miss. Ct. App. 2021).

¶33. "In adjusting property division between parties, the chancellor should be afforded considerable latitude." *Messer v. Messer*, 850 So. 2d 161, 169 (¶38) (Miss. Ct. App. 2003) (citing *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss.1994)). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id*. at 167 (¶23) (citing *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss. 1990)). "Such division and distribution will be upheld if it

is supported by substantial credible evidence." *Id*. (citing *Bunyard v. Bunyard*, 828 So. 2d 775, 776 (¶5) (Miss. 2002)).

¶34. However, we have reversed cases where the chancery court has failed to value the marital personal property assets. In *Horn*, 909 So. 2d at 1164 (¶48), we stated:

> The chancellor failed to make findings on the fair market value of the property from the evidence presented. As we do not know the value of the assets and debt awarded to [the wife,] Karen, we are unable to meaningfully review [the husband,] Jason's argument that the property division was unfair and inequitable. *Pucylowski* [*v. Pucylowski*], 741 So. 2d [998,] 1002 (¶17) [(Miss. Ct. App. 1998)]. Thus, we remand this case for detailed findings of fact and conclusions on the fair market value of the assets.

In *Ward v. Ward*, 825 So. 2d 713, 718 (¶15) (Miss. Ct. App. 2002), the chancery court failed to assign values to ten horses, saddles, tack and other equine-related gear, a mobile home, and vehicles that the parties owned. We held that "because all of the marital property was not properly identified and valued, the distribution ordered by the chancery court was not equitable," and we reversed. *Id*. In *Wilson v. Wilson*, 811 So. 2d 342, 346 (¶13) (Miss. Ct. App. 2001), the chancery court failed to assign values to a front-end loader, trailer, and subsoiler. We reversed the property division in that case because, among other things, the chancery court failed to value all of the marital items before making its equitable distribution. *Id*. at (¶14).

¶35. Keeping these principles in mind, we now turn to the issues raised in this appeal.

### I. Whether the chancery court erred in its valuation of the marital home and furnishings.

¶36. In this case, the chancery court set the demarcation date as the date of separation, January 2017. The court then determined what it considered to be marital property, including

16

the marital home and furnishings, R&G, the boat, the camper, the lawnmower, and "various tools." First, Greg challenges the chancery court's valuation of the marital home and home furnishings.[14]

¶37. In its opinion, the chancery court concluded that there was $20,000 equity in the home, which we find was supported by the evidence. In her Rule 8.05 financial statement, Rhonda valued the home at $100,000 and said $88,000 was owed on it; in his financial statement, Greg valued it at $135,000 with $109,000 still owed on it. Other evidence presented to the court included a print-out from a real estate internet site that reflected a potential sales price of $120,000 if the property were listed. Neither party offered any formal appraisal. Thus, the chancery court was presented with equity values of $12,000 and $26,000 using the parties' Rule 8.05 financial statements, and either $11,000 or $32,000 of equity in the home, using the internet site and the outstanding balances each claimed were owed. Comparing the highest equity value ($32,000) to the lowest ($11,000), the record clearly supports the chancery court's choice of nearly the average, $20,000, to value the home's equity. *See Williams v. Williams*, 129 So. 3d 233, 241 (¶32) (Miss. Ct. App. 2013) (approving the averaging of valuations on the Rule 8.05 financial statements to value marital realty); *McKnight v. McKnight*, 951 So. 2d 594, 596 (¶7) (Miss. App. Ct. 2007) (approving the averaging parties' proposed appraisals of property to value marital home). Accordingly, because there was adequate evidence in the record to support the chancery court's finding,

---

[14] Greg also argues that the chancery court failed to properly value R&G. Because Greg raises the valuation of R&G as a separate issue, we defer that discussion to paragraphs 44 through 50.

the chancery court did not abuse its discretion in valuing the equity in the marital home at $20,000.

¶38. The chancery court valued the home furnishings at $10,000 (the $30,000 combined amount less the $20,000 value of the home equity). This too is supported by evidence in the record. In his Rule 8.05 financial statement, Greg valued the home furnishings at $11,000. Rhonda testified that they were worth $3,000 to $4,000. Thus, there was adequate proof in the record to support the chancery court's valuation of the home furnishing which fell between the two estimates provided to it. *See Williams*, 129 So. 3d at 241 (¶32); *Horn*, 909 So. 2d at 1165 (¶49) (approving the court's use of Rule 8.05 financial statements to assess value). Accordingly, we affirm the chancery court's valuation of the home furnishings at $10,000.

## II. Whether the chancery court erred in failing to value other items of property.

¶39. Greg next argues that the chancery court failed to value the Mazda vehicle that was awarded to Rhonda. He also contends that the chancery court failed to classify, value, and distribute the tractor, personal clothing of the parties, "other equipment," and bank accounts—items which the chancery court did not mention in its opinion or final judgment.

¶40. In *Smith*, 856 So. 2d at 719 (¶8) (citing *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss.1994)), we stated that "[i]n dividing the property of the divorcing couple, the chancellor must first classify their assets and liabilities as belonging to the marriage, to the husband, or to the wife." In that case, the parties owned real property, vehicles, an IRA, a credit union account, and a retirement account. *Id*. at 718 (¶4). The chancery court divided

18

the property between the parties, but he did not identify which property was marital and which was separate. *Id*. at 719 (¶9). On appeal, we held:

> [W]ithout knowing what was marital property and what was the separate property of the spouses, we cannot fairly evaluate the equitable distribution. We therefore hold that the chancellor abused his discretion in classifying and distributing the assets of the marital estate.

*Id*.

¶41. Similarly in *Ewing v. Ewing*, 203 So. 3d 707, 712 (¶16) (Miss. Ct. App. 2016), the husband argued that in addition to failing to identify a demarcation date, the chancellor erroneously failed to classify the assets of the parties as either marital or non-marital. Even though the chancellor determined what property he considered as marital property, and assigned values to each of those assets, he did not classify the separate assets. *Id*. Therefore, on appeal, we remanded the property distribution and ordered the chancellor to determine the date of demarcation and whether the parties accumulated any separate property. *Id*.

¶42. In this case, the chancery court did not classify the Mazda as either marital or non-marital property, and the court did not address or value the other property of the parties, including the tractor, personal clothing,[15] a four-wheeler,[16] tools and equipment including

---

[15] On his Rule 8.05 financial statement, Greg listed his personal clothing, which he valued at $3,000, that he claimed was "in the possession of his wife since the separation." Rhonda testified that Greg got his clothes; Greg testified that he did not. Contrary to what the dissent writes, there was clearly a dispute over this, which the chancery court did not address. While this item may be insignificant individually, it still warrants a finding for the chancery court and not one for us to make.

[16] The dissent contends that the valuation of whatever four-wheelers the parties owned was unnecessary because the number of vehicles was unclear, because Greg testified that he had one and totaled it, and because the court awarded the four-wheelers to Greg, so he could not claim he was prejudiced. However, the point of a chancery court's

19

a generator, air compressor, chainsaw(s) and miscellaneous tools.[17]  While there may be testimony or evidence in the record from which we could classify some of this property,[18] it is not our role to make such findings of fact.  "Trial and appellate courts have separate institutional roles. Our role is that of an appellate court and not as triers of fact." *In re Est. of Eubanks v. Huber*, 251 So. 3d 734, 740 (¶13) (Miss. 2018).  Accordingly, we reverse the chancery court's overall distribution of the marital property of the parties so that the chancery

---

classification, valuation, and distribution of the assets is to insure fairness to all parties. Even Greg points out, it is impossible to calculate the ultimate distribution of the parties' marital assets without the chancery court's findings on each asset claimed.  Moreover, as we note below, the chancery court may well conclude that there was a dissipation of marital assets in Greg's sale or destruction of these four-wheelers that the chancery court might calculate in its final distribution.

[17] The dissent would again just modify the chancery court's judgment to award Greg the specific equipment the parties listed and testified to, including a generator, air compressor, and chainsaws because the chancery court awarded Greg his "tools."  However, the chancery court did not specifically find that these other items were included in what it termed as "tools."  Greg valued these items between $6,000 and $12,000.  Such amounts could significantly affect the overall equitable distribution of the property and the chancery court needs to be specific in its classification, valuation, and distribution of these items.

[18] For example, Rhonda testified that Greg took her vehicle, and she purchased the Mazda on her own; Greg noted in his proposed findings of fact that the Mazda was purchased after the parties separated.  Because the Mazda was acquired after the date of demarcation, the chancery court had the discretion to classify it as a separate asset acquired post-separation by Rhonda and not as marital property.  *Aron v. Aron*, 832 So. 2d 1257, 1259 (¶8) (Miss. Ct. App. 2002).  Regarding the tractor, Rhonda testified that Greg had purchased it before they were married, and there was no testimony that the tractor was used by the parties during the marriage that would transform it into a marital asset under the "family use" doctrine.  So it too may be a non-marital asset. We disagree with the dissent, which would "simply modify the [chancery court's] judgment to clarify that Greg can keep his tractor."  However, it is inappropriate for us to do so when the chancery court's judgment is utterly silent about the status, value, or distribution of the tractor.  Otherwise, we would be making original findings of fact.

court can classify *each* item as either marital or separate, value each item,[19] and then equitably divide the property between the parties using the *Ferguson* factors.

¶43. On remand, the chancery court may also reconsider its finding on the dissipation of assets by either party which is another *Ferguson* factor to be considered. "While Mississippi has no specific test for discerning the dissipation of marital assets, 'we find it reasonable when considering if marital assets have been dissipated to look to whether the assets in question were actually wasted or misused.'" *Reynolds*, 287 So. 3d at 1025-26 (¶20) (quoting *Smith v. Smith*, 90 So. 3d 1259, 1268 (¶37) (Miss. Ct. App. 2011)); *Ferguson*, 639 So. 2d at 928. In this case, both parties indicated that the four-wheelers were marital property, one of which was valued at nearly $6,000. Greg took that vehicle and testified that he totaled it. Accordingly, the chancery court may take this into consideration in its overall distribution of the property.

### III. Whether the chancery court erred in failing to value R&G Auto Sales.

¶44. The chancery court awarded the ownership of R&G to Greg, except for the "black truck" which it gave to Rhonda. Greg does not challenge the court's award of the dealership to him; he merely challenges the chancery court's failure to articulate the value of R&G. We agree with the chancery court that R&G was a marital asset; however, because the court failed to value it, we reverse the court's overall distribution of it and all the marital property.

---

[19] Here the chancery court *collectively* valued the boat, lawnmower, and trailers at $3,300 but then awarded the lawnmower to Rhonda and the boat and trailers to Greg. But without knowing the value of each item, it is impossible for this Court to assess the fairness of the property distribution overall.

On remand, the chancery court should value R&G and utilize that value in its overall distribution of the assets between the parties, noting any *Ferguson* factor that may affect the overall distribution.[20]

¶45.    In *MacDonald v. MacDonald*, 698 So. 2d 1079, 1084-85 (¶27) (Miss. 1997), the Mississippi Supreme Court held that when the parties were married in 1983 and purchased a pawn shop in 1990, "[c]learly, the business was formed 'during the marriage,' and thus was subject to equitable distribution by the chancellor upon evaluation of the *Ferguson* guidelines." In this case, the parties do not dispute that R&G is a marital asset. They started the business together during the marriage; Rhonda invested a substantial sum of her severance pay and 401k funds to help it grow and Rhonda worked there on nights and

---

[20] We note that the chancery court itself pointed out that Rhonda invested $30,000 in the business. She did not formally "loan" the money to R&G but contributed it to the expansion of the business. In *Ferguson*, the supreme court stated:

> A spouse who has made a material contribution toward the acquisition of property which is titled in the name of the other may claim an equitable interest in such jointly accumulated property incident to a divorce proceeding. *Jones v. Jones*, 532 So. 2d 574, 580 (Miss. 1988) (citing *Watts v. Watts*, 466 So. 2d 889 (Miss. 1985); *Chrismond v. Chrismond*, 211 Miss. 746, 52 So. 2d 624 (1951)). *See also Brendel v. Brendel*, 566 So. 2d 1269, 1273 (Miss. 1990), where this court affirmed the lower court's decision ordering a husband to convey to his wife one-half interest in a home titled only in the husband's name. This Court pointed out in Jones that recent cases had wrestled with the definition of "contribution" within the context of the acquisition of assets. Nevertheless, we said that "if 'contribution' toward the acquisition of assets is proven by a divorcing party, then the court has the authority to divide these 'jointly' accumulated assets."

*Ferguson*, 639 So. 2d at 935. Accordingly, Rhonda's contribution may be considered under the chancery court's consideration of the *Ferguson* factors to determine the extent of her ownership interest in the business.

weekends. R&G was not incorporated and although Greg listed it as a sole proprietorship on his 2016 income tax submission, Greg admitted during the trial that Rhonda was entitled to half of the dealership's assets. These facts clearly support the chancery court's finding that the business was marital property subject to equitable distribution.

¶46. However, although there was some evidence presented from which the court could have valued R&G, the chancery court did not do so.[21]

---

[21] On his Rule 8.05 financial statement, Greg valued R&G as of 2016 at $6,241, saying it was his "good faith estimate" based on information contained in his 2016 tax filing. But this was contradicted by the figures on his tax return which he filed as a single person and not as married filing separately. According to the return, the business grossed $276,476 in 2016. After deducting the expenses for tax purposes (including $4,759 in depreciation, $4,500 in commissions and fees, and $9,000 for "other business property expenses" for a total of $258,447), the net business income was $18,029, nearly three times more than the value Greg "estimated." The chancery court was also presented with bank statements for the business that showed monthly deposits from 2015 through 2017 ranged from a low of $2,400 in November 2015 to a high of $38,097 in March 2017. According to these records, the business grew over the three years from 2015 through 2017 with annual deposits that rose from $97,299.53 in 2015 to $182,465.82 in 2017. So even though Greg's valuation was contradicted by evidence in the record, the chancery court still had information from which to determine its own valuation.

The dissent states that because Rhonda does not want a remand, she is satisfied, and the issue of valuation of the business need not be addressed. The dissent would simply accept Greg's $6,251 valuation of the business on his 2020 Rule 8.05 financial statement. Moreover, the dissent characterizes R&G as a "small used car lot," relying on Greg's testimony in 2020 and 2021 about the number of cars on the lot and his financing plan. However, the valuation of the business is to be determined as of the date of demarcation, January 2017, not the date of the trial in March 2021. Certainly, further evidence will need to be presented to determine what a willing buyer would have paid for that business back then. But the point is that the chancery court did not accept Greg's valuation and never valued the business itself when making the award. The chancery court's finding of the value of the business, especially in light of the business's finances from prior years, is necessary for there to be a truly equitable and fair distribution of the parties' assets. What Greg did with the business after the separation of the parties may constitute a dissipation of assets as well. Only on remand with further evidence and specific findings by the chancery court can it be determined what the true value of R&G was at the relevant time.

23

¶47. Greg also complains that the chancery court failed to secure an expert valuation of the business, raising *Chism v. Chism*, 285 So. 3d 656 (Miss. Ct. App. 2019), as support. But although Greg had the option of presenting such testimony or asking the chancery court to appoint an expert, he did neither.[22] Moreover, in *Benton v. Benton*, 239 So. 3d 545 (Miss. Ct. App. 2018), we pointed out that it was incumbent on the parties, not the court, to present evidence on the valuation of family-owned businesses and when this is not done, the chancery can proceed on the best information it has available. *Id*. at 548-49 (¶12). We reiterated this in *Lageman v. Lageman*, 313 So. 3d 1075, 1079 (¶9) (Miss. Ct. App. 2021), stating that "if a party fails to provide accurate or sufficient information or cooperate in the valuation of an asset, the chancellor is entitled to proceed on the best information available to him or her."

¶48. As we said In *Chism*, in determining the fair market value of a business the chancery court needs to use one of three approaches: an asset-based approach, a market-based approach, or an income-based approach. *Chism*, 285 So. 3d at 664 (¶26). We reversed the chancery court's valuation in *Chism* because it was not based on competent proof utilizing any of these methods. *Id*. at 665 (¶28). Ultimately, a chancery court must make an equitable division of the property of the parties. "Mississippi law requires equitable distribution of the marital estate during divorce proceedings." *Case v. Case*, 339 So. 3d 796, 810 (¶52) (Miss.

---

[22] We do note that in *Chism*, we reversed a chancery court's decision which valued a chicken-wing-restaurant business at $1,000,000 because the court based the value solely on the wife's testimony of that estimated value, *Chism*, 285 So. 3d at 663 (¶23), when the tax returns of the business showed net profits for three years ranging from $48,000 to $63,000 and did not support a $1,000,000 valuation. The facts here are similar to those in *Chism* because Greg's "estimated" value of R&G differs from the figures in his tax return.

Ct. App. 2022) (citing *Reynolds*, 287 So. 3d at 1023 (¶8)). To do so, the chancery court must value the parties' assets based on the information provided and divide it equitably. *Id*.

¶49. In this case, although the chancery court was not presented with any expert testimony on the issue, it was provided R&G bank statements and tax documents which it could utilize in determining a value. In addition, Greg testified that during the marriage the parties purchased a "red truck" for the business to haul vehicles which he valued at $20,000 and which was located at the dealership. Other items discussed by the parties, including a compressor, were also located at the dealership and were assets of the business. The chancery court itself found that "three trucks are owned free and clear by R&G Auto Sales," but the court did not identify or value these nor did it value the business itself.

¶50. Again, it is not for us but for the chancery court to determine the value of R&G from the evidence presented. Accordingly, we reverse the chancery court's overall distribution of the marital property of the parties, so that the court can value R&G, and then equitably divide all the parties' properly classified marital property using the *Ferguson* factors. The chancery court has the option of reviewing the evidence already presented by the parties, or requiring the parties to present additional competent evidence if needed to support either of the three methods of business valuation. Or it may choose to appoint an expert itself, paid by the parties, to perform a valuation as we authorized in *Chism*, 285 So. 3d at 665 (¶28).

### IV. Whether the chancery court erred in awarding the black truck and Rhonda's mother's wedding ring to Rhonda.

¶51. Greg finally argues that the chancery court erred in its award to Rhonda of the "black truck" and Rhonda's mother's wedding ring.

25

*A.     Black Truck*

¶52.    Greg argues that the chancery court erred in its award of the black truck to Rhonda because she did not list the truck on her Rule 8.05 financial statement and because neither he nor R&G owned the truck.  The chancery court identified the "black truck" as the truck "which was driven to court on the final day of trial."   Although the chancery court determined that "the business, R&G Auto Sales, and the vehicles which are owned free and clear" were marital assets, the chancery court did not specifically find that the black truck was one of those vehicles that R&G owned free and clear.[23]  It is unclear, however, why the chancery court considered this vehicle to be marital property as opposed to it being an asset of R&G which would then be included in the value of the dealership which the parties would ultimately share.  Thus, the classification of the "black truck" is unclear.[24]  In addition, the chancery court did not place a value on this vehicle.  Accordingly, we  reverse the chancery court's award of the "black truck" to Rhonda and remand the issue for further classification,

---

[23] Greg testified that title to the truck he drove to court would be transferred back to an individual named Carl Thomas when Thomas overcame his drug habit.  However, Greg later admitted that truck was titled in the name of R&G.  However, the chancery court made no specific finding as to whether this black truck was an asset of R&G to be included in the valuation of R&G, or whether it was marital property separately owned and purchased by the parties during the marriage.

[24] Even the dissent acknowledges that just what truck was awarded in this case is unclear.  It notes the three different descriptions given of the "black truck."  Rhonda talked about the black truck that the parties paid cash for prior to the parties' separation; Greg talked about a black truck that was paid for and titled in the name of R&G; and the chancery court described it as the black truck Greg drove to court one day.

26

valuation and distribution by the chancery court on remand.[25]

### B. Rhonda's Mother's Wedding Ring

¶53.    On appeal, Greg argues that Rhonda is not entitled to her mother's wedding ring because she did not list this asset on her Rule 8.05 financial statement. This is true, but the parties testified about the ring at trial.[26] In its opinion and final judgment, the chancery court did not classify the ring as either marital or separate property, yet the court awarded the ring to Rhonda. Again while there is evidence in the record for the ring to be classified as separate property,[27] we do not make such original findings. On remand, the chancery court may consider the evidence in the record or any further evidence it may desire the parties to submit and then classify, value, and distribute the ring.

**Conclusion**

¶54.    Because the evidence in the record supports the chancery court's valuation of the

---

[25] The issue with respect to the black truck is not whether the chancery court had the authority to award the truck to Rhonda, as the dissent says. Rather, the issue is the clear identification of the truck in question, its classification, and its value, so that an overall equitable distribution of assets can be reached.

[26] We agree with the dissent that the issue of the ring was tried by implied consent under Mississippi Rule of Civil Procedure 15(b).

[27] From the testimony at trial, the ring never belonged to either Rhonda or Greg during the marriage. Rhonda testified that after the separation, she had put items in the camper in preparation for a trip with her mother but that her mother became ill and they did not go. Rhonda said that her mother's wedding ring was in the camper that Greg later took it without notice to her. Her mother then passed away. It would appear then that the ring became property inherited by Rhonda after the separation which would not be marital property. *Parker v. Parker*, 929 So. 2d 940, 945-46 (¶23) (Miss. Ct. App. 2005) (finding that an inheritance is not a marital asset). However, this is not for us, but for the chancery court to decide.

equity in the home and home furnishings, we affirm those findings of the chancery court.

We also affirm the chancery court's finding that R&G was marital property. However, because it is impossible for this Court to evaluate the chancery court's overall distribution of assets, and given the lack of specific classification of much of the parties' property and the lack of valuation of each individual item of property, including but not limited to R&G,[28] we reverse in part and remand the chancery court's distribution of the marital property for further proceedings consistent with this opinion.[29]

¶55. **AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**GREENLEE, WESTBROOKS, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND CARLTON, P.J.**

**WILSON, P.J., DISSENTING:**

¶56. This appeal involves the equitable distribution of a small marital estate with few assets. By the time of the trial and final judgment, the parties had already been living separately for four years. The most significant marital assets for the chancellor to address

_____

[28] Other items needing classification, valuation, and distribution include the tractor, personal clothing, four-wheelers, tools and equipment, the "black truck" and Rhonda's mother's wedding ring.

[29] "Trial and appellate courts have separate institutional roles, and our role is that of an appellate court and not as triers of fact ab initio." *Pittman v. Mem'l Hosp. at Gulfport*, 300 So. 3d 1053, 1060 (¶27) (Miss. Ct. App. 2020) (quoting *Tricon Metals & Servs. Inc. v. Topp*, 516 So. 2d 236, 239 (Miss. 1987)). "We strive mightily to respect limitations upon our role where appeals are taken regarding issues of fact." *Tricon Metals & Servs. Inc.*, 516 So. 2d at 239. Here, by deciding several issues of fact and modifying the chancery court's judgment, the dissent would have us overstep that boundary line.

28

were a house with about $20,000 in equity,[30] which Rhonda owned prior to the parties'

marriage, and R&G Used Auto Sales (R&G), a small used car lot in West Memphis,

Arkansas, that the parties' started during the marriage. The chancellor applied the *Ferguson*

factors[31] and found that Rhonda clearly "made the most contributions financially to the

accumulation of assets" and also made greater "[c]ontributions to the stability and harmony

of the marriage." Most notably, Rhonda, who is employed by a property management

company, contributed $15,000 from her retirement savings and another $15,000 in severance

pay to start R&G. However, the chancellor also found that he could provide Greg with

financial security and avoid the need for alimony by awarding R&G to Greg. Thus, despite

Rhonda's significant investments in the business, the chancellor awarded Greg full

ownership of R&G. The chancellor also awarded Greg the parties' boat, tools, trailers, and

four-wheelers. The chancellor awarded Rhonda the house and furnishings, a lawnmower,

and a pickup truck. The final judgment also provided that Greg could keep the parties'

camper, which had equity of approximately $11,635, if he refinanced it to remove Rhonda's

name. If Greg did not refinance the camper, Rhonda would receive it.

¶57.    On appeal, Greg argues that the chancellor's equitable distribution should be reversed

because the chancellor failed to classify and assign values to several assets. "However, a

failure to classify property does not automatically result in reversible error if the division of

property is fair." *Branch v. Branch*, 174 So. 3d 932, 944 (¶45) (Miss. Ct. App. 2015). In

---

[30] I concur with the majority that the chancellor's valuation of the house is supported by substantial evidence and should be affirmed.

[31] *See Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss.1994).

addition, in some cases we have affirmed a chancellor's division of property despite the chancellor's failure to assign values to certain assets. *See Inge v. Inge*, 227 So. 3d 1185, 1191 (¶19) (Miss. Ct. App. 2017); Deborah H. Bell, *Bell on Mississippi Family Law* § 6.07[2], at 175 (3d ed. 2020). In the present case, the chancellor's "division of property is fair" to Greg and should be affirmed. *Branch*, 174 So. 3d at 944 (¶45).

¶58. The majority reverses and remands based on four alleged errors: the chancellor's failure to "classify" or "address" a 2007 Mazda Miata and other miscellaneous personal property (*ante* at ¶42); the chancellor's failure to value R&G (*ante* at ¶¶44-50); the chancellor's failure to classify and value the "black truck" awarded to Rhonda (*ante* at ¶52); and the chancellor's failure to classify and value Rhonda's mother's wedding ring (*ante* at ¶53). I address these issues in turn below.

## I. The Mazda and Other Miscellaneous Personal Property

¶59. The first reversible error identified by the majority opinion is described as follows:

> [T]he chancery court did not classify the Mazda as either marital or nonmarital property, and the court did not address or value the other property of the parties, including the tractor, personal clothing, a four-wheeler, tools and equipment including a generator, air compressor, chainsaw(s) and miscellaneous tools. . . . Accordingly, we reverse the chancery court's overall distribution of the marital property of the parties, so that the chancery court can classify *each* item as either marital or separate, value each item, and then equitably divide the property between the parties using the *Ferguson* factors.

*Ante* at ¶42 (footnotes omitted).

### A. The Mazda

¶60. Rhonda purchased a 2007 Mazda after she and Greg separated in January 2017. She testified that she did so because Greg "took [her] car away and gave it to his girlfriend."

30

Rhonda stated that she "paid 400 and something dollars a month for it" so that she "could have a vehicle to drive." When she was asked "[w]hat happened to [the car]," she stated that she "got a better car that [she] could get back and forth to work in." Based on this testimony, Greg himself understands that Rhonda had "traded" the car prior to trial and no longer owned it.[32] The only evidence in the record indicates that the debt on this old car, *which was solely in Rhonda's name*, far exceeded its value. The chancellor's failure to address an old car that Rhonda purchased after the parties' separation and no longer owned had no impact on the equitable distribution of the marital estate. It was not error, let alone reversible error.

### B.    The Tractor

¶61.    Rhonda testified that Greg owned the tractor prior to their marriage, which would mean that the tractor was at least fifteen years old at the time of the divorce. She testified that the tractor "doesn't run" and that she does not know "anything about it" or its value. Greg claimed the tractor as his separate, non-marital property and valued it at $5,000. On appeal, Rhonda states that Greg "was awarded" the tractor, and she makes no claim to it. In fact, Rhonda is mistaken, as the final judgment did not award the tractor to either party. This sort of oversight easily could have been addressed in a motion to amend the judgment pursuant to Rule 59 of the Mississippi Rules of Civil Procedure, but Greg instead chose to raise the issue on appeal. Regardless, this Court can simply modify the judgment to clarify

---

[32] The car was also repossessed in or around January 2019, but Rhonda testified that she "borrowed . . . money" to "get it back." Rhonda's Rule 8.05 statement listing the car was dated February 5, 2019, almost two years prior to the start of trial.

31

that Greg can keep his tractor.[33]  There is no reason to believe that the chancellor's failure to address an old, possibly inoperable tractor impacted the distribution of the remainder of the marital estate.  Therefore, there is no need to remand the case for further proceedings based on this oversight.

### C.    The Parties' Clothes

¶62.    As noted above, the parties had been separated for more than four years by the time of the final judgment.  Rhonda testified that Greg took his clothes with him when he left.  There is no evidence that either party had any clothes of any great value.  There is no need to reverse and remand for the chancellor to value clothing or rule that the parties can keep their respective wardrobes. *Rodriguez v. Rodriguez*, 2 So. 3d 720, 727 (¶16) (Miss. Ct. App. 2009) ("[T]his case should not be remanded in order for the chancellor to assign values to properties when there was no dispute over how they should be divided.").

### D.    The Four-Wheeler(s)

¶63.    Rhonda testified that at one time the parties owned four four-wheelers, although it is unclear how many they owned when they separated or at the time of trial.  Regarding one particular four-wheeler, Greg testified, "I wrecked it.  I don't have it any more.  It's totaled."  The chancellor awarded Greg the parties' "4-wheelers," although, again, it is not clear that they still owned any four-wheelers.  Greg fails to show how the chancellor's failure to value the four-wheelers prejudiced him or rendered the overall equitable distribution unfair.

---

[33] Such a modification would hardly be an "original finding[] of fact." *Ante* at n.18. It would simply acknowledge that Rhonda has conceded that Greg can keep his tractor. There is no need to force Rhonda to endure the expense of a remand for further proceedings regarding an old tractor that she does not want.

### E. Tools and Equipment

¶64. In Greg's Rule 8.05 financial statement, he referred to his "Fixtures, Tools & Equipment" collectively. Then in his amended proposed findings of fact and conclusions of law, Greg referred to his "Tools & Equip" collectively, with a footnote that stated, "Such includes, but is not limited to: Generator, Air Compressor, and Chain Saw(s)." The chancellor found that the parties' "boat, lawnmower and tools" had a total value of $3,300. The final judgment then awarded Greg "all his tools."[34] Rhonda was not awarded any tools or equipment. On appeal, Greg now argues that we should reverse because the final judgment "omits equipment." However, Greg fails to identify what "equipment" is at issue or in dispute. Rhonda responds that Greg "was awarded" the "equipment," and she makes no claim to it. Apparently, Rhonda interprets the final judgment's award of "tools" as inclusive of "equipment," which is reasonable since Greg consistently referred to his "tools" and "equipment" collectively. At most, this Court should modify the judgment to clarify that Greg was awarded his "equipment."

\* \* \* \* \*

¶65. In summary, there is no dispute regarding the award of any of the various items discussed above, some of which the parties no longer owned by the time of the final judgment. Moreover, Greg fails to show that the chancellor's failure to classify or assign a value to any of these items prejudiced him. This Court can modify the final judgment to award Greg the tractor and his equipment. Otherwise, the division of property is fair and

---

[34] Greg was also awarded the boat. Rhonda was awarded the lawnmower.

33

should be affirmed.

## II. Value of R&G

¶66. Although the chancellor awarded Greg the parties' business—a small used car lot in West Memphis, Arkansas—Greg complains on appeal that the chancellor erred by not assigning a value to the business. In the chancery court, Greg valued the business at $6,261, while Rhonda did not offer any opinion regarding its value.

¶67. The evidence indicates that R&G is not a valuable asset. On the first day of trial, Greg testified that he had only ten to fifteen used cars on the lot. On the second day of trial, he said there were only five cars on the lot. He testified that all vehicles are financed through a "floor plan" and are owned by his lender until they are sold. He said that he has a line of credit for $50,000 but "only use[s] about [$10,000]." He testified regarding several specific vehicles on the lot and estimated that he could sell them for amounts ranging from $1,500 to $3,800. Per Greg's Rule 8.05 financial statement, he earns only $2,500 per month working full-time at R&G. Greg fails to show how the chancellor's failure to assign a value to his small used car lot prejudiced him or impacted the overall fairness of the equitable distribution of the marital estate.

¶68. The majority argues that Greg's valuation of R&G is "contradicted" by evidence that he reported gross receipts of $276,476 and net business income of $18,029 in 2016 and made deposits to his business account totaling $182,465.82 in 2017. *Ante* at n.21. This argument is not only incorrect but also irrelevant to Greg's appeal. There is no inherent contradiction between Greg's valuation and the evidence regarding the business's gross revenues. A disinterested "willing buyer" probably would not pay much to acquire a small West Memphis

34

car lot whose sole proprietor earns only $18,029 per year while working full-time at the business. *See Singley v. Singley*, 846 So. 2d 1004, 1011 (¶18) (Miss. 2002) (holding that the "fair market value" of a business for purposes of equitable distribution is "that price at which [the business] would change hands between a willing buyer and a willing seller"). Gross revenue figures are not evidence of a valuable business when, taking into account the cost of goods sold and other expenses, the sole proprietor working full-time at the business can only eke out a meager living.

¶69. Moreover, even if the majority is correct that Greg undervalued his business, that is not a reason for reversal. The majority remands the case to force Rhonda to present "further evidence" on this issue because the majority speculates (1) that R&G may have been worth more than $6,251 at the time of the parties' separation and (2) "[w]hat Greg did with the business after the separation . . . may constitute dissipation of assets as well." But Rhonda—the appellee—is the party who would benefit from such findings, and Rhonda does not want a remand. She is satisfied with the chancellor's equitable division and just wants the case to come to an end.

¶70. As the appellant, Greg must show prejudice to obtain reversal. *See, e.g.*, *Miss. State Hwy. Dep't v. Meador*, 184 Miss. 381, 186 So. 642, 643 (1939) ("Two things an appellant must show in order to obtain a reversal of the judgment appealed from: (1) Error therein, and (2) that he was prejudiced thereby . . . ."). Here, Greg fails to show how the chancellor's failure to assign a specific value to R&G prejudiced him or impacted the overall fairness of the equitable distribution.

¶71. Finally, citing *Chism v. Chism*, 285 So. 3d 656, 665 (¶28) (Miss. Ct. App. 2019), the

35

majority suggests that the chancellor may appoint an independent expert to value the business, with the cost to be paid by the parties. *Ante* at ¶50. But there is no reason for the court to impose such a cost on the parties simply to assign a value to a small used car lot with minimal profits. Regardless of the precise value assigned to R&G, the overall division of assets is fair and should be affirmed.

### III. The "black truck"

¶72. Rhonda testified that Greg had a "black truck" that he paid cash for prior to their separation. Greg likewise testified that he owns a "black truck" that was paid for and that was "titled to R&G." In the final judgment, the chancellor awarded Rhonda "[t]he black truck, for lack of a better description, which was driven to court on the final day of trial." The majority states this award was error because "[i]t is unclear . . . why the [chancellor] considered this vehicle to be marital property as opposed to it being an asset of R&G" and also because the chancellor "did not place a value on this vehicle." *Ante* at ¶52. Neither issue requires reversal. According to his tax returns, Greg operated R&G as a sole proprietorship. "An owner of an unincorporated sole proprietorship owns the actual assets of the business . . . . These assets may become part of the marital estate." Deborah H. Bell, *Bell on Mississippi Family Law* § 8.01, at 237 (3d ed. 2020). The owner of a sole proprietorship and his business are one in the same. The fact that Greg may have titled the truck in a trade name under which he does business did not prevent the chancellor from awarding it to Rhonda. In addition, although the chancellor did not assign a value to the truck, Greg again has not shown that the omission prejudiced him or that the overall distribution of the marital estate was unfair.

### IV. Rhonda's Mother's Wedding Ring

¶73. Greg was in possession of the parties' camper at the time of trial, and the chancellor awarded it to him, provided that he refinanced it to remove Rhonda's name. Rhonda testified that she and her mother had taken a trip in the camper a few months before trial and that her mother's wedding ring was left in the camper. Rhonda's mother passed away shortly before trial, and Rhonda testified that it was important to her to get her mother's wedding ring back. Greg did not offer any testimony about the wedding ring. The final judgment stated that Rhonda should receive her mother's wedding ring.

¶74. On appeal, Greg asserts at least three different arguments about the ring. First, in his opening brief, Greg "denies Rhonda['s] testimony that [he] was in possession of the [ring]." However, Greg's denial is not evidence because he failed to testify about the ring at trial. *See, e.g.*, *Abercrombie v. Abercrombie*, 193 So. 3d 680, 683 (¶9) (Miss. Ct. App. 2016) ("Factual assertions raised in appellate briefs are not evidence and will not be used as grounds for reversing the trial court's judgment.").

¶75. Second, Greg complains that the ring was "never pled or listed in any pleadings or discovery prior to trial." However, the issue arose only shortly before trial, and Greg did not object when Rhonda specifically requested the ring during her testimony at trial. The chancellor properly decided the issue because it was tried by implied consent. *See* M.R.C.P. 15(b).

¶76. Third, Greg argues that the chancellor erred by not assigning a value to the ring. But the value of the ring is immaterial to the overall fairness of the equitable distribution of this marital estate. Assuming that Rhonda inherited the ring from her mother, it is clearly

Rhonda's separate property because her mother died long after the date of demarcation. In any event, Greg had no claim to the ring and was in no way prejudiced by its award to Rhonda or the absence of a valuation.

**Conclusion**

¶77. The various alleged errors Greg cites are all harmless. This Court can modify the judgment to award Greg his tractor and equipment and thereby eliminate any lack of clarity or potential for confusion. Otherwise, the chancellor's division of property is more than fair to Greg and should be affirmed.

**BARNES, C.J., AND CARLTON, P.J., JOIN THIS OPINION.**